(105 App. Div. 197.)

PEOPLE ex rel. WILLIAMS et al. v. BOARD OF CANVASSERS OF ESSEX COUNTY.

(Supreme Court, Appellate Division, Third Department. May 3, 1905.)

1. ELECTIONS—REMOVAL OF COUNTY SEAT—BALLOTS—VALIDITY—STATUTES—CONSTRUCTION.

Election Law, Laws 1896, p. 937, c. 909, § 82, as amended by Laws 1901, p. 1455, c. 598, § 3, provides that at the top of each ballot, immediately above the perforated line, shall be printed the following words only: "Notice to Electors: For an affirmative vote on any question submitted upon this ballot, make a cross X mark after the word 'Yes.' For a negative vote, make a similar mark in the square following the word 'No.'" Ballots for voting on the question of the removal of a county seat contained, in addition to the words quoted as permitted above the perforated line, the words: "Any other mark than the cross X mark used for the purpose of voting on any erasure made on this ballot, makes it void, and no vote can be counted hereon. If you tear, or deface or wrongly mark this ballot return it and obtain another. Use only a pencil having a black lead"—

as required by the direct provisions of section 81 (page 933) to be printed on the stubs of general ballots. *Held*, that in view of the further provision of section 82 that such ballots shall comply with the requirements of official ballots for candidates for public office in so far as applicable, and as the added words were applicable to and were required to be printed on official ballots for office, and the failure of the elector to observe each of the admonitions contained in the added words in voting on the question submitted would have rendered his ballot void, under rule 9, subd. 2, § 110, as amended by Laws 1898, p. 971, c. 335, § 7, and Laws 1901, p. 1675, c. 654, a contention that the ballots were void because not in the form required by section 82 was untenable.

2. SAME.

Nor was the validity of the ballots affected by Laws 1896, p. 956, c. 909, § 106, providing that none but ballots provided in accordance with the provisions of the election law shall be counted; the ballots in question having been provided in accordance with the provisions of that law, and being official ballots.

3. SAME.

The ballots having been prepared and furnished by the county clerk in good faith after consulting with counsel, they would not be void, even though the added words were inadvertently or wrongly used.

4. SAME—WHEN QUESTION MAY BE RAISED.

Election Law, Laws 1896, p. 945, c. 909, § 86, charges the county clerk with the duty of providing official ballots and requires him to have sample ballots five days, and official ballots four days, before the election open to public inspection, and provides that during that time it is his duty to deliver a sample ballot of the kind to be voted in his district to each qualified elector who shall apply therefor. Section 88 (page 947) provides that in case of any error or omission in printing the official ballot a summary application may be made to the Supreme Court or a justice thereof by any elector to correct such error or omission, and authorizes the county clerk on his own motion to correct without delay any patent error in the ballots which he may discover or which shall be brought to his attention, and which can be corrected without interfering with the timely distribution of the ballots. *Held* that, with these provisions in the statute to insure correctness of the official ballot, complaints as to the form of the ballots, when raised after an election, are too late to be available.

5. SAME—VOTING MACHINES—FORM OF VOTING—VALIDITY.

In certain districts where voting machines were used, the questions submitted were in the same form as on the official ballot, and neither the cardboard containing the statement of the question, nor the machine, had on it the words "For" and "Against," which are the words used in Laws 1899, p. 950, c. 466, art. 7, permitting the use of voting machines. Instead of the words "For" and "Against," the machines had on them for voting on the question submitted the words "Yes" and "No," and any elector who desired to vote in the affirmative on the question turned the indicator on the machine to the word "Yes," and if he desired to vote in the negative he turned it to the word "No." There was but one question submitted at the election, and there was no claim that any elector was deceived by the use of the words placed in the machine, instead of those mentioned in the statute. *Held*, that as the words "Yes" and "No" are the words required by Election Law, Laws 1896, p. 937, c. 909, § 82, for questions submitted, and are exact equivalents of "For" and "Against" when used for the purpose of expressing an affirmative or negative choice on a question, and as the machines were provided by the public officials for the use of the electors at the election, a contention that the votes cast by the aid of the machines should not be counted was untenable.

6. SAME—ABSENCE OF TALLY SHEET—EFFECT.

Election Law, Laws 1896, p. 938, c. 909, § 84, prescribes a form of tally sheet, but the law nowhere in express terms requires the result of the vote on questions submitted to be entered on the tally sheets. *Held*, that the

failure of the election officers to file a tally sheet containing a statement of the votes cast on a question submitted was not an irregularity affecting the result of the election on the question submitted, especially as the official tally sheets furnished by the county clerk had no blanks on which to tally votes cast on the question submitted.

**7. SAME—SEALING ORIGINAL STATEMENTS OF CANVASS—VALIDITY.**

It was alleged by relators that original statements of canvass from certain districts were filed with the clerk and delivered to the defendant board, and wrongfully canvassed, in that they were not securely and separately sealed with sealing wax, as required by Election Law, Laws 1896, p. 965, c. 909, § 112. The allegations were denied by the answering affidavits, which showed that, while the statements were not in every case "separately sealed," yet in every case they were "securely sealed" with sealing wax when filed with the county clerk, one having been sealed inclosed with the tally sheet, one with detached stubs and unvoted ballots, one with the pollbook and tally sheet, and others with other official papers used at the election. The answering affidavits also showed that the failure to comply strictly with the requirements of the statute in this respect was unintentional. *Held*, that as at most the failure was a mere irregularity, resulting either from not fully comprehending the statutory requirements, or from oversight on the part of the inspectors, and as there was no claim that the irregularity resulted from any tampering with the returns, or from any fraud in connection with them, or that the returns as canvassed did not correctly show the votes cast on the question in the districts from which they came, the electors in those districts should not be disfranchised because of them, and the contention that they were wrongfully canvassed was untenable.

**8. SAME—RETURNS—TIME FOR FILING.**

Under Election Law, Laws 1896, p. 965, c. 909, § 113, requiring election returns to be filed with the county clerk within 24 hours after the completion of the canvass, returns delayed beyond 24 hours without any intention to violate the law are properly canvassed by the county board of canvassers, especially in view of section 131 (page 968), requiring the county board of canvassers to meet on the next Tuesday after an election, and providing a way to secure the production before it of any missing original statement of canvass, or of a certified copy thereof, before it proceeds to make its canvass, and the absence of any provision of the law rendering the return void because of delay beyond 24 hours.

**9. SAME—INACCURATE STATEMENT—SELF-CORRECTION.**

Where one page of the return made by inspectors of election stated that the whole number of "Question Submitted" ballots actually voted were "none," and on another page of the same return the inspectors certified to 176 votes in the affirmative and 92 in the negative on the only question submitted at the election, the return carried the correction on its face, and was properly canvassed.

**10. SAME—QUESTIONS REVIEWABLE.**

A question as to the legality of the form of a question submitted cannot be raised in a proceeding instituted under Election Law, Laws 1896, p. 969, c. 909, § 133, authorizing the court, when it appears that any errors have occurred in any statement or determination made by any board of county canvassers, or that any such board has failed to act in conformity to law, to correct such errors or perform such duty.

Appeal from Special Term, Essex County.

Proceeding by the people, on the relation of Charles N. Williams and others, against the board of canvassers of the county of Essex. From an order granting a peremptory writ of mandamus requiring defendant to reconvene, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

R. Corbin and E. T. Stokes, for appellant.

Richard L. Hand and Francis A. Smith, for respondent.

CHESTER, J. The order appealed from grants a peremptory writ of mandamus requiring the defendant to forthwith reconvene as the board of canvassers of Essex county and correct certain alleged errors in its canvass, and perform its duty by rejecting and excluding from its canvass and certificate thereof all votes cast upon the question submitted at the election on the 8th day of November, 1904, as to whether or not the site of the courthouse and county buildings in that county should be removed from Elizabethtown to Westport. The result of the canvass as certified by the board was 3,432 votes in the affirmative and 3,134 in the negative on such question, being a majority of 298 in favor of removal. The voting was by ballot in all the election districts of the county, except in the First District of Moriah and the two districts of Ticonderoga, where voting machines were used. The canvass of the districts where the machines were used shows 723 votes in the affirmative and 298 in the negative. The ballots were used in all the other districts, were precisely the same in form, and were the official ballots furnished by the county clerk. There is no allegation in the moving papers of any fraud or dishonesty in the election or in the returns thereof, nor that the canvass and the certificate thereof made by the defendant does not correctly give the result of the votes actually cast and returned for and against the proposition. But the relators seek to sustain the order because of certain alleged defects and irregularities in the ballots and in the returns, and in the use of voting machines in certain districts, rendering, as they insist, the election void. These will be considered in their order:

1. It is urged that all the ballots cast are void because not in the form required by section 82 of the election law (Laws 1896, p. 937, c. 909, as amended by Laws 1901, p. 1455, c. 598) for questions submitted. That section provides that:

"At the top of each such ballots, immediately above the perforated line shall be printed in brevier capital type the following words only: 'Notice to Electors: For an affirmative vote upon any question submitted upon this ballot, make a cross X mark in the square after the word "Yes." For a negative vote, make a similar mark in the square following the word "No." ' "

In addition to these words the ballots in question contained above the perforated line the following words, required by section 81 of the election law (page 933) to be printed on the stubs of general ballots, viz.:

"Any other mark than the cross X mark used for the purpose of voting or any erasure made on this ballot, makes it void, and no vote can be counted hereon. If you tear, or deface or wrongly mark this ballot return it and obtain another. Use only a pencil having a black lead."

It is not claimed that the use of these additional words served to mark or identify any specific ballot, for they were all alike, or deceived any elector, or in any way affected the number of votes cast. Notwithstanding section 82 states that there shall be printed above the perforated line "the following words only," the same section

also provides that "such ballots shall comply with the requirements of official ballots for candidates for public office, in so far as such requirements are applicable thereto." The phrases should be read and construed together. The added words were applicable to, and were required to be printed upon, official ballots for candidates for office, and the failure of the elector to observe each of the admonitions contained in these added words in voting upon the question submitted would have rendered his ballot void. Rule 9, subd. 2, § 110, Election Law, as amended by section 7, c. 335, p. 971, Laws 1898, and chapter 654, p. 1675, Laws 1901. The rule cited defines what, under the law, constitutes a void ballot, and it is not claimed that the ballot in question comes under the condemnation of that rule. Nor does the provision of section 106 of the election law that "none but ballots provided in accordance with the provisions of the election law shall be counted," which is called to our attention by the respondents, affect the question, for the ballots in question here were provided in accordance with the provisions of that law and were official ballots. The purpose of that provision is clearly to prevent the use of any other than official ballots, except only in the cases provided for in sections 89 and 107 of the law, and not to condemn as invalid official ballots which have been furnished to the electors by public officers charged with that duty, for some oversight or error on their part. The county clerk, whose duty it was to prepare and furnish the official ballots, in good faith, and after consulting with counsel, caused them to be printed with the added words, and furnished them for the use of the electors. Even though such added words were inadvertently or wrongly used, instead of lawfully, as I think, the ballots would not for those reasons be void. Hirsh v. Wood, 148 N. Y. 143, 42 N. E. 536. The case cited was one where the clerk wrongly and without authority of law inserted in a party column names of candidates other than those duly nominated by the party whose name and emblem headed the column. Nevertheless the court held that the electors were not for that reason to be disfranchised, and that votes cast for such candidates were properly counted. The principle upon which that case rested is controlling here, as is shown from the following pertinent quotation from the opinion of Chief Judge Andrews. He says (148 N. Y. 146, 147, 42 N. E. 537):

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult."

It may be said also that by section 86 of the election law the officer (in this case the county clerk) charged with the duty of providing official ballots is required to have sample ballots five days, and official ballots four days, before the election, open to public inspection, and that during such time it is his duty "to deliver a sample ballot of the kind to be voted in his district to each qualified

elector who shall apply therefor, so that each elector who may desire the same may obtain a sample ballot, similar except as regards. color and the number on the stub to the official ballot to be voted at the polling place where he is entitled to vote." Thus the opportunity is afforded all electors to inspect the official ballot, and to procure a sample ballot, several days before the election; and the way is also provided in section 88 of the election law, in case of any error or omission in printing the official ballot, for a summary application to the Supreme Court or a justice thereof by any elector to correct such error or omission. The same section also authorizes. the county clerk, upon his own motion, to correct without delay any patent error in the ballots which he may discover, or which shall be brought to his attention, and which can be corrected without interfering with the timely distribution of the ballots to the inspectors for use at such election. With these provisions in the statute to insure correctness of the official ballot, it is too late after an election to hear complaints as to the form of such ballots, and this is the general rule prevailing where such safeguards are contained in statutes providing for official ballots. 10 Am. & Eng. Enc. of Law (2d Ed.) 714; 15 Cyc. 352.

2. In the districts where voting machines were used the questions. submitted were in the same form as upon the official ballot, and neither the cardboard containing the statement of the question, nor the machine, had upon it the words "For" and "Against," which are the words used in section 183 of the election law in defining the word "ballot" as used in the article of that law relating to voting machines (article 7, added by chapter 466, p. 950, Laws 1899). Because of this fact it is urged that the votes cast by the aid of the machines should not be counted. Instead of the words "For" and "Against," the machines had upon them for voting upon the question submitted the words "Yes" and "No," and any elector who desired to vote in the affirmative upon such question turned the indicator upon the machine to the word "Yes," and if he desired to vote in the negative he turned it to the word "No." There was. but the one question submitted at the election, and there is no pretense that any elector was deceived in voting by the use of the words placed in the machines, instead of those mentioned in the statute. The words "Yes" and "No" are the words required by section 82 of the law to be used on official ballots for questions submitted, and are the exact equivalents of the words "For" and "Against" when used for the purpose of expressing an affirmative or negative choice upon such question. More than this, the voting machines. with these words upon them were provided by the public officials for use of the electors at the election districts in question. What has been said with respect to official ballots applies with equal force to voting machines, and the voter should not be disfranchised for the errors or omissions of such officials.

3. It is also urged by the relators, as an irregularity affecting the result, that no tally sheet as to the question submitted was filed from any district, and that the tally sheets filed as to the general ticket contained no statement that any votes were cast upon any

such question. The official tally sheets furnished by the county clerk had no blanks upon which to tally the votes cast upon such question. Provision was made upon them to tally the votes cast by candidates only. This form of tally sheet conforms exactly with the form prescribed by the election law (section 84), and the law nowhere in express terms requires the result of the vote on questions submitted to be entered upon the tally sheets. The purpose of the tally sheet, under the law, seems to be confined to entering thereon the votes cast for the respective candidates for office, and to first stating thereon the number of such votes cast and counted upon straight ballots for each candidate, and then, in a separate column, to stating the number of such votes cast and counted upon split ballots, and finally, in another column, to stating the number of votes cast and counted for each of the respective candidates, in order to safeguard the count and insure accuracy in it and in the returns, and in order to secure conformity to the method of counting ballots prescribed by subdivision 3 of section 110 of the election law. There is no need for this in counting votes cast upon a question submitted, for there can be no split ballots cast. Omitting void ballots and those marked for the purposes of identification, they are all necessarily affirmative or negative votes, and can simply be separated into two piles and counted. There is no pretense that the votes were not correctly counted as cast, and correctly inserted in the original statement of canvass, and nothing appears on this branch of the case that should in any way affect the final result.

4. It is alleged also by the relators that original statements of canvass from 12 election districts, showing in the aggregate 1,404 votes in the affirmative and 1,106 in the negative, were filed with the clerk and delivered to the defendant board and wrongfully canvassed, for the reason that they were not securely and separately sealed with sealing wax, as required by section 112 of the election law. These allegations were denied by the answering affidavits, which show that, while such statements were not in every case "separately sealed," yet in every case they were "securely sealed" with sealing wax when filed with the county clerk; one having been sealed inclosed with the tally sheet, one with detached stubs and unvoted ballots, one with the pollbook and tally sheet, and others with other official papers used at the election. The answering affidavits show that the failure to comply strictly with the requirements of the statute in this respect was in each case unintentional. At the most, these failures were mere irregularities, resulting either from not fully comprehending the statutory requirements, or from oversight on the part of the inspectors. In the absence of any claim that these irregularities resulted from any tampering with the returns, or from any fraud in connection with them, or that these returns as canvassed did not correctly show the votes cast on the question in the districts from which they came, the electors in such districts should not be disfranchised because of them. People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451.

5. The claim is also made that because the returns from the elec-

tion district of Newcomb, the election district of North Hudson, and the Second Election District of Ticonderoga were not filed with the county clerk within 24 hours after the completion of the canvass in these districts, respectively, as required by section 113 of the election law, the 359 votes in the affirmative and 211 votes in the negative cast in these districts should have been excluded from the canvass by the defendant. The canvass in the election district of Newcomb was completed at 2 o'clock in the morning of November 9th. At about 6 o'clock the same morning an inspector started with the returns for Elizabethtown, the county seat, 50 miles distant, over mountain roads. He was unable, by reason of the condition of the roads and of his horses, to reach the county clerk's office that day within the regular office hours of the clerk. He consequently remained over night at Underwood, 38 miles distant from his starting point, and reached the clerk's office the next morning at 8 o'clock. The returns for North Hudson were first presented to the county clerk on November 9th, and within the 24 hours; but, on defects therein being pointed out by the clerk, the inspector was requested to take them back for correction, and return with them that night, if possible. Because of difficulty in finding the other inspectors, he was unable to get the corrections made until the night of the 9th. This prevented him from filing the corrected returns with the county clerk until about 8 o'clock on the morning of the 10th. The filing of the return from the Second District of Ticonderoga was also delayed until the 10th because of the failure to furnish the inspectors, as the law required, with the blank for "Inspector's Return and Statement of Canvass" for that election. This was procured from the clerk on the 9th, and returned and filed on the 10th. The effort in each of these cases, it appears, was not to violate the law, but to comply with it, and it is not claimed that the belated returns in each case do not represent accurately the votes cast in these districts upon this question. The election law provides a way in section 131 for the county board of canvassers, which is required to meet on the next Tuesday after an election, to secure the production before it of any missing original statement of canvass, or of one of the certified copies thereof, before it proceeds to make its canvass. Thus the law expressly recognizes the possibility of the filing of the returns being delayed beyond the 24 hours. There is no provision rendering them void because of such delay, and the purpose of the provision to secure the filing of such returns is that they may be canvassed. For these reasons, although the returns in question were not filed within 24 hours, they were properly canvassed by the defendant.

6. The defendant counted and included in its canvass 176 votes in the affirmative and 92 in the negative from the Third District of Moriah, where it was stated on one page of the return made by the inspectors that "the whole number of 'Question Submitted' ballots actually voted * * * were none." It appeared, however, upon another page of the return that the inspectors had certified the votes cast upon the question as above stated. No objection was made before the defendant to canvassing these votes, and no one now ques-

tions the accuracy of the returns upon the other page as to the votes cast. On the application for this writ there was read on behalf of the defendant the affidavits of all four of the inspectors in that district that when they inserted the word "none" they supposed the blank where it was inserted related only to other questions than the removal of the county buildings, and that they inserted the word there under a misapprehension. They also each swear to the correctness of the vote from their district upon the question as included by the defendant in its canvass and certificate of the result. If the return of the inspectors had been objected to upon the canvass by the defendant, the inspectors could have been summoned before them, pursuant to section 132 of the election law, to correct the error. This not having been done—and apparently there was no need to do so, for the return carried the correction upon its face—it was properly canvassed by the defendant.

7. Objection is also made to the form of the question submitted on the ballot, which was as follows:

"Shall the site of the Court House, County Clerk's Office, County Jail, County Judge and Surrogate's Office, County Treasurer's Office, Sheriff's Office, District Attorney's Office and all County offices connected with the said Court House and said County Buildings now located in the Village of Elizabethtown, County of Essex, be changed to a new site in the town of Westport, in said County of Essex, described as follows: [Including the description of the new site.]"

The claim is that sections 31, 32, and 33 of the county law (Laws 1892, p. 1753, c. 686) provide that the change and question submitted must in terms include the location of the county offices, and that there is no reference in the ballot to a change of the location of any county office, but only to a change in the site of such offices. We need not discuss the question as to whether or not there is any force in this objection, as it cannot be properly decided in this proceeding, which is one instituted under section 133 of the election law. That section authorizes the court, when it appears that "errors have occurred in any statement or determination made * * * by any board of county canvassers, or that any such board has failed to act in conformity to law," to "correct such errors or perform such duty." The statute did not charge the defendant with the duty of determining the legality of the election or of the ballots, but it was required to canvass the votes cast at the election. Election Law, § 131. It not being its duty to determine whether the question submitted was proper in form, the court had no power to compel them to do so by mandamus, but the decision of that matter must be left to an appropriate action to determine the validity of the election.

Some further questions of a technical nature are raised by the respondents, but they do not impress me with sufficient force to require extending this already somewhat lengthy opinion by discussing them.

The review so far had of the questions presented on this appeal leads me to the conclusion that there has been no failure on the part of the defendant to act in conformity to law, and that there

have been no errors shown in any statement or determination made by it, and consequently that the writ of mandamus addressed to it was improperly granted.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the motion for the writ denied, with $50 costs and disbursements. All concur.