WILLIAM J. SHEILS, Appellant, *v.* EDWARD J. FLYNN, as Secretary of State, ERNEST F. EILERT and JAMES H. SULLIVAN, as and Constituting the Board of Elections of the County of Westchester, Respondents; and CHARLES H. GRIFFITHS, as Chairman of the Republican County Committee of Westchester County, Intervenor, Respondent, and WILLIAM CRONIN, as Chairman of the Democratic County Committee of Westchester County, Intervenor, Appellant.*

Third Department, October 25, 1937.

* Affg. 164 Misc. 302; affd., 275 N. Y. 446.

*Julius Weiss, Timothy A. McCarthy* and *William J. O'Shea, Jr.*, [*Julius Weiss* of counsel], for the plaintiff, appellant.

*Walter G. C. Otto* [*Edward K. Kennedy* of counsel], for the intervenor, appellant, William Cronin, as chairman, etc.

*William A. Davidson, County Attorney* [*Frank J. Claydon* of counsel], for the respondent Board of Elections of County of Westchester.

*Walter W. Westall* [*Alfred M. Bailey* of counsel], for the intervenor, respondent, Charles H. Griffiths, as chairman, etc.

RHODES, J. The plaintiff seeks a declaratory judgment requesting a determination that at the general election held on November 3, 1936, he was duly elected surrogate of the county of Westchester.

On a former appeal it was held that the action is maintainable and that the complaint states a cause of action. (*Sheils* v. *Flynn*, 252 App. Div. 140.)

After a trial the court below entered a decision dismissing the complaint. (164 Misc. 302.)

The parties agree that there is no dispute as to the underlying facts.

At such general election plaintiff was the nominee of the Democratic and the American Labor parties, and George A. Slater was the nominee of the Republican party. Surrogate SLATER was declared elected and entered upon and held office from January first following the election until the date of his death on February

23, 1937. Thereafter plaintiff was appointed by the Governor to fill the vacancy and entered into possession of said office and is now acting as such surrogate. The action involves the question as to whether his term of office expires at the end of the year 1937, or whether he holds office for a full term of six years.

The answer to the question depends upon whether or not he was duly elected at said general election. By his complaint he alleges that he received a majority of the "legal votes," cast for such office.

The tabulation of the machine and absentee vote for said candidates at said election as officially returned and canvassed was as follows:

|  | Sheils | Slater |
|---|---|---|
| Machine vote | 123,228 | 122,929 |
| Absentee vote | 459 | 856 |

giving Slater a plurality of 98.

An examination of the voting machines was later had pursuant to order of the Supreme Court, which disclosed that the actual machine vote was as follows:

| | |
|---|---|
| Sheils | 123,210 |
| Slater | 122,919; |

with this correction, and adding thereto the absentee ballots cast for each respectively, Slater thus had a plurality of 106 votes. No question is raised as to the validity of the ballots voted by machines, but plaintiff attacks the legality of the absentee paper ballots.

By section 1-a of article II of the Constitution of the State the Legislature is authorized to provide for absentee voting by qualified voters " who may  *  *  *  be unavoidably absent from the State or county of their residence because they are inmates of a soldiers' and sailors' home or of a United States veterans' bureau hospital, or because their duties, occupation or business require them to be elsewhere within the United States."

Pursuant to this authorization the Legislature has provided for absentee voting. Section 117 of the Election Law relates to the application for ballots by absentee voters. Section 118 provides for a determination by the election board as to whether the applicant is a duly qualified voter, and whether he is entitled to an absentee ballot.

Plaintiff claims that all of the absentee ballots were illegal and should not have been counted, because of the fact that there was but one ballot containing the names of all officials to be voted for at such election in the respective districts, whereas, he asserts,

there should have been three separate ballots, one for presidential electors, another for general officers and still another for questions submitted and voted upon at said election.

Section 119 directs that in the city of New York the ballots for absentee voters " shall be as nearly as practicable in the same form as those to be voted in the district of the applicant on election day." The phraseology of this section as to territory elsewhere than in the city of New York is not so explicit but no good reason appears why there should be a different rule in the city of New York than elsewhere. This section expressly provides that ballots for electors for President and Vice-President and the *separate* ballot or ballots upon constitutional amendments, propositions or questions to be sent to absentee voters " shall be in the same form as such ballots to be voted by other voters." (See, also, §§ 104, 105 and 249.) It would seem that the statute fairly contemplates that absentee ballots shall be as nearly as practicable in the same form as other ballots.

The ballots upon the voting machines, of course, appeared as one entire ballot; the absentee ballots were, therefore, proper in form. Furthermore, by section 109 of said law, sample ballots are required to be open to public inspection a specified number of days before election, and section 330 thereof provides for a summary proceeding before the Supreme Court relative to the form and contents of official ballots.

Thus objection as to such form of ballots cannot now be considered. (See *People ex rel. Hirsh* v. *Wood*, 148 N. Y. 142; *People ex rel. Williams* v. *Board of Canvassers*, 105 App. Div. 197; affd., on opinion below, 183 N. Y. 538.)

The same may be said as to plaintiff's objection to the form of oath required by section 120 of the Election Law to be printed on the envelope containing the ballot delivered to the board of elections, and which oath, as printed, it is claimed deviated slightly from the form provided for by said section.

It is the further contention of plaintiff that large numbers of the applications of absentee voters were insufficient upon the face thereof to entitle them to receive absentee ballots.

By said section 117, a qualified voter, except as to inmates of soldiers' and sailors' homes and United States veterans' bureau hospitals, if desiring to vote as an absentee voter, is required to appear before the proper election board and make and verify before said board his affidavit showing among other things his residence, that he is a qualified voter in the district; " that he expects in good faith to be *unavoidably absent* * * * for one of the following reasons * * * because his duties, occupation

or business require him to be elsewhere,  *  *  *  giving a brief description of the duties, occupation or business which requires such absence; also, in the case of absence on account of duties, occupation or business, the special circumstances by which such absence is required, unless such duties, occupation or business are of a nature to require ordinarily absence from the State or county or require ordinarily traveling beyond the boundaries of the State or county, which shall include, among others," certain employees specified. Evidently such specification is for the purpose of illustration to clarify the legislative intent.

The objection to many of the applications is based upon the fact that the statement therein contained is not sufficiently complete to establish that the applicant will be unavoidably absent. For instance, the reasons given for the absence are, " business duties," " business transactions," " away on business," " absent on business," " business detains me," " business," " business reasons," etc., which was followed by a statement of the applicant's business, such as " Clerk," " Butcher," " Fish Culturist " and similar brief descriptions.

Other objections are raised to the effect that the applications were verified before a notary public instead of before an official of the board, as required by the statute; that in some cases the application contains no statement as to the duty, occupation or business requiring the absence of the applicant; that in some the application was verified too late by a voter, not required to appear before the board, or was verified before a member of the board when the board was not in session, or the affidavit was not subscribed, or showed on its face that the voter would be outside the United States or would be within the county on election day.

The court below in his opinion stated that the total of these latter ballots which were clearly not in conformity to the statute, would not change the result.

Section 118 of the statute requires the board to determine whether the duties, occupation or business of the applicant " as set forth in his affidavit," are of a nature ordinarily to require absence or to require traveling beyond the State or county and if not of such a nature, whether the special circumstances " as set forth in the affidavit," are sufficient. Nothing in the express language of the section seems to preclude the board from making investigation in addition to the bare statements of the application to determine whether the circumstances support the claim of the applicant. At any rate, the section requires the board to keep a record of such applications as received for absentee voters' ballots, showing the names and residences of the applicants and a complete list

thereof is to be furnished as soon as practicable to the chairman of the county committee of each party.

There is thus opportunity for investigation previous to the election. In addition, section 210 of the said law permits any person present to object to the qualifications of any such voter and to the voting of any such ballot, and said section 330 provides a summary remedy in case of the voting of a ballot after such objection. Thus, upon this phase of the subject it is too late to raise these questions.

Moreover, the reasoning of the court below is sound wherein he held that the acts of the election officials relative to such absentee ballots involved the exercise of judgment or discretion and was, therefore, judicial (*Matter of Wicksel* v. *Cohen*, 262 N. Y. 446; *Howland* v. *Eldredge*, 43 id. 457; *People ex rel. Francis* v. *Common Council*, 78 id. 33); and that a collateral attack upon such determination will not be entertained, citing *Swift* v. *City of Poughkeepsie* (37 N. Y. 511); *Buffalo & State Line R. R. Co.* v. *Supervisors of Erie County* (48 id. 93); *Mayor, etc., of City of New York* v. *Davenport* (92 id. 604); *United States Trust Co.* v. *Mayor, etc., of N. Y.* (144 id. 488); *Stanley* v. *Jay Street Connecting Railroad* (182 App. Div. 399).

The plaintiff's counsel argues that if the law is construed so as to permit the counting of these absentee ballots the door will be opened to possibilities of fraudulent voting. There is, however, no question of fraud presented in this case. No challenge was interposed to any absentee voter and no protest was interposed to any of the absentee ballots.

The court below properly held that these voters should not be disfranchised for a mistake, if any, of election officials in performing the duty cast upon them. (*People ex rel. Hirsh* v. *Wood, supra.*)

An unreasonable technical rule of strict compliance in connection with the function of election officials would wrongfully disfranchise innocent voters and might in a close election create governmental chaos.

If permission to vote as an absentee voter results in large numbers thus voting and thereby enlarges the possibility of fraudulent and illegal voting, the subject is one for legislative action and the matter can easily and speedily be corrected by the Legislature. The court has nothing to do with such legislative functions and should not legislate judicially.

The judgment should be affirmed, without costs.

HILL, P. J., BLISS and HEFFERNAN, JJ., concur; McNAMEE, J., dissents.

Judgment affirmed, without costs.