(August 23, 2004)

■ In the Matter of RICHARD A. GROSS et al., Respondents, v ALBANY COUNTY BOARD OF ELECTIONS, Respondent, and WILLIAM M. HOBLOCK et al., Appellants. (And Another Related Proceeding.) [781 NYS2d 172]—

Per Curiam. Appeal from a judgment of the Supreme Court (Sheridan, J.), entered June 15, 2004 in Albany County, which, inter alia, partially granted petitioners' applications, in two proceedings pursuant to Election Law §§ 16-102, 16-106 and 16-112, to declare invalid certain absentee and affidavit ballots cast for the office of Albany County Legislator, 26th and 29th Districts, in the April 27, 2004 special general election.

These proceedings review respondent Albany County Board of Elections' determination to unseal and/or count certain affidavit and absentee ballots cast for two seats for the office of Albany County Legislator, 26th and 29th Districts, in the April 27, 2004 special general election. The election was preceded by a special primary election held March 2, 2004. Both were to be conducted pursuant to an order of the United States District Court for the Northern District of New York (hereinafter the federal order).* As here relevant, the court ordered that absentee ballots for the March 2, 2004 special *primary* election shall be sent "to any voter who filed an application for an absentee ballot for either or both the 2003 primary or general election" but that "[t]he process for obtaining and counting absentee ballots for the April 27, 2004 special *general* election for the office of County Legislator shall be governed by Article 8 of the New York Election Law" (emphasis added).

The Board did not comply with the order. Rather, it mailed absentee ballots for *both* the special primary election and the special general election to those voters who had submitted applications for the November 4, 2003 general election. During the counting of the ballots, objections were made to various absentee and affidavit ballots which were cast during the special general election. Richard A. Gross and Gene Messercola,

---

* This proceeding arose from a federal court action which alleged that the Albany County Legislature's redistricting plan violated the Voting Rights Act of 1965 (42 USC § 1973; *see generally Arbor Hill Concerned Citizens v County of Albany*, 357 F3d 260 [2004]). The Second Circuit Court of Appeals directed that both a special primary and general election be conducted using an approved, revised redistricting plan. It was upon remand to the District Court that the specific method for conducting such elections was determined.

candidates for the office of County Legislator for the 26th and 29th Districts, respectively, commenced a proceeding challenging various absentee applications and ballots cast during that election as did William M. Hoblock and Lee R. Carman, rival candidates for the office of County Legislator in the 26th and 29th Districts, respectively. Supreme Court partially granted each petition and this appeal by Hoblock and Carman ensued.

It is settled that, whenever reasonably possible, technical errors should be transcended so as to safeguard a voter's right to have his or her intent implemented and his or her vote counted (*see Matter of Weinberger v Jackson*, 28 AD2d 559, 559 [1967], *affd* 19 NY2d 995 [1967]). However, under these unique circumstances, we find Supreme Court to have correctly determined that absentee ballots which were sent to voters for the special general election, solely based upon their absentee ballot application for the November 4, 2003 general election, are void due not only to the Board's clear abrogation of that part of the order which directed the manner in which the special general election was to be conducted, but also all statutory authority (Election Law §§ 8-400, 8-406). To vote by absentee ballot in the special general election, a qualified voter was required to make an application for an absentee ballot indicating the specific reason such voter would be absent from Albany County on the day of such election (*see* Election Law § 8-400 [1], [2]). Without any absentee ballot application pertaining to the special general election, the Board had no legal authority to issue the absentee ballots (*see Matter of Mondello v Nassau County Bd. of Elections*, 6 AD3d 18, 22 [2004]; *Matter of Baker*, 126 Misc 49, 53 [1925], *affd* 215 App Div 791 [1925]).

The Board's conduct, which was in complete derogation of the federal order as well as all statutory authority (*see* Election Law §§ 8-400, 8-406), cannot be countenanced by a determination that the error was merely ministerial. While we are loathe to disenfranchise any qualified voters, we cannot condone this violation of both a court order and all statutory mandates. To hold otherwise would abrogate the purpose of the Election Law, which is to avoid fraud and illegality in the election process. As noted by the Court of Appeals: "Both the actual operation and public perception of the electoral process as one that seeks regularity and evenhanded application must not be distorted. The Election Law must have a neutral application unaffected by party affiliation, policy, position, incumbency, race, sex, or any other criterion irrelevant to a determination of whether its requirements have been met. In short, a too-liberal construction of the Election Law has the potential for inviting mischief on

the part of candidates, or their supporters or aides, or worse still, manipulations of the entire election process" (*Matter of Staber v Fidler*, 65 NY2d 529, 534 [1985]). Thus, while these voters were without fault, were we to count their votes, we would invite continued "mischief" by the Board. Inasmuch as the absentee ballots of Ellen Graziano, Richard Luke and Suzanne Luke were also based on their absentee ballot applications for the November 4, 2003 general election, these ballots are also void.

Turning to the sufficiency of the challenges to the remaining absentee ballots, we are constrained to find that the ballots of James O'Sullivan and Joan O'Sullivan were properly invalidated. Election Law § 8-412 (1) provides that "[t]he board of elections shall cause . . . all ballots contained in envelopes showing a cancellation mark of the United States postal service . . . with a date which is ascertained to be not later than the day before election and received by such board of elections not later than seven days following the day of election to be cast and counted." Here, the absentee ballots were returned to the O'Sullivans in order that the envelopes be endorsed. The O'Sullivans thereafter remailed their ballots and signed envelopes to the Board. The Board, however, failed to retain the envelope containing the ballots and executed envelopes. Without the postmarked envelope, these ballots cannot be counted because extrinsic evidence would be necessary to determine whether the ballots were timely received (*see* Election Law § 8-412 [1]; *Matter of Carney v Davignon*, 289 AD2d 1096 [2001]; *Matter of Kroening*, 187 AD2d 1045 [1992]).

However, we find that Supreme Court properly determined that the absentee ballot applications of Ethel Foley, Bette Muller and Helen Berrian set forth sufficient information pursuant to Election Law § 8-400; the failure to indicate the name of their physician on their absentee ballot applications was not fatal (*see Matter of St. John v Board of Elections of County of Albany*, 145 Misc 2d 324 [1989]). Also proper was the acceptance of the absentee ballot of Marie Mullen since she submitted a timely application indicating a permissible reason under Election Law § 8-400 for not voting in person. A subsequently discovered failure by the Board to properly scrutinize the sufficiency of the reason stated on the voter's application will not disenfranchise the voter (*see generally Sheils v Flynn*, 252 App Div 238 [1937], *affd* 275 NY 446 [1937]; *Matter of St. John v Board of Elections of County of Albany, supra*).

With respect to the absentee application of Louis De Paolo, we agree with Supreme Court that the application fails to

indicate a permissible reason pursuant to Election Law § 8-400 for his unavailability to justify an absentee ballot. This, and the fact that the application contains the signature of both De Paolo and his wife, renders the application incomplete and insufficient.

We also agree with Supreme Court's decision to invalidate the absentee ballot designated as ballot 36 because of extraneous marks outside the voting square which could possibly identify the voter (*see Matter of Mondello v Nassau County Bd. of Elections*, 6 AD3d 18 [2004], *supra*; *Matter of Carney v Davignon*, *supra*; *Matter of Nicolaysen v D'Apice*, 100 AD2d 501 [1984], *appeal dismissed* 62 NY2d 976 [1984]; *Matter of Franke v McNab*, 73 AD2d 679 [1979]).

With respect to the affidavit on the ballot of Patty Craig, it was signed by the voter, acknowledging that any false statement was punishable according to law. In our view, such acknowledgment complied with the requirements of Election Law § 8-302 (3) (e) (ii), despite the failure of the election inspector to witness the voter's signature. Finally, we agree that the absentee ballot votes cast by Alan Fitzpatrick and Lindsay Di Dio should be counted. Fitzpatrick's absentee ballot application belies any contention that the date of his absence from the county was not indicated and Di Dio's failure to date the application was cured, for these purposes, by the Board's time stamp.

Mercure, J.P., Peters and Mugglin, JJ., concur.

Spain, J. (concurring in part and dissenting in part). We dissent, respectfully and only in part, with respect to that portion of the majority's decision which affirms the invalidation of the ballots of those voters who obtained absentee ballots for the April 27, 2004 special general election solely based on respondent Albany Board of Elections' noncompliance with the federal order.* While we do not condone the error made by the Board in mailing absentee ballots for the special general election based on applications made the year before, rather than requiring new applications as contemplated by the federal order and Election Law article 8, we find it unacceptable and unjust to disfranchise innocent voters who acted in understandable reliance on the Board's actions when they cast their votes utilizing absentee ballots sent to them by the Board.

Clearly, the Election Law requires voters to make an application indicating a specific reason necessitating the use of an absentee ballot in the pertinent election (*see* Election Law § 8-

---

* We agree, however, with Supreme Court's determination that the ballots of Ellen Graziano, Richard Luke and Suzanne Luke are invalid for other stated reasons.

400 [1], [2]). Here, however, that process was altered by the federal order providing that, at least with respect to the special primary election, absentee ballots would be issued based on all applications filed in 2003. Because the federal order had already modified the process of obtaining absentee ballots, it is insufficient to point to noncompliance with the specific letter of the Election Law to resolve this matter. Indeed, pursuant to the federal order, it appears that the voters in question, without filing an application, properly received and successfully utilized absentee ballots for the special primary election. When they then automatically received ballots for the special general election the very next month, there can be little argument that they acted reasonably in relying on those ballots to cast their votes.

In sum, we find it exceedingly unfair and unjust to deprive voters of their constitutional right to vote where "[n]o suggestion is made that the persons who voted the ballots were not duly qualified electors [and] . . . [t]here was nothing within or upon the ballot from which a voter could know that the ballot was not . . . in exact conformity to the law," leaving the voter powerless to remedy an error created entirely by actions of the election officials (*People ex rel. Hirsh v Wood*, 148 NY 142, 146 [1895]). Notably, in *People ex rel. Hirsh v Wood (supra)*, the Court of Appeals went so far as to say: "We can conceive of no principle which permits the disenfranchisement of innocent voters for the mistake[,] or even the willful misconduct[,] of election officers in performing the duty cast upon them" (*id.* at 146-147; *see Sheils v Flynn*, 252 App Div 238, 243 [1937], *affd* 275 NY 446 [1937]; *see also Matter of Kolb v Casella*, 270 AD2d 964, 965 [2000], *lv denied* 94 NY2d 764 [2000]; *Matter of St. John v Board of Elections of County of Albany*, 145 Misc 2d 324, 328 [1989]). Accordingly, in keeping with the spirit of the principle that "[t]he object of election laws is to secure the rights of duly qualified electors, and not to defeat them" (*People ex rel. Hirsh v Wood, supra* at 147), and given the absence of any evidence of fraud or manipulation, we would reverse with respect to those votes discarded based solely on the Board's failure to comply with the federal order.

Carpinello, J., concurs. Ordered that the judgment is affirmed, without costs.