The People of the State of New York ex rel. Hugo Hirsh, Appellant, *v.* Martin V. Wood et al., Constituting the Board of Canvassers of Queens County, Respondents.

1. Elections — Official Ballots — Irregularities on the Part of Officers. The votes of innocent electors are not invalidated by irregularities or unauthorized acts on the part of public officers charged with the duty of preparing and printing official ballots, when no irregularity or want of authority appears on the face of the ballots.

2. Official Ballots — Unauthorized Insertion of Candidates. A county clerk, charged with the duty of preparing and printing the official blanket ballots for the general election of 1895, inserted and printed in the column of a local county party, which had made local nominations only, together with the names of the local candidates it had nominated the names of candidates for state and judicial offices who had been duly nominated and certified by, and whose names were also printed in the column of, the party of which the local party was a faction. These ballots were furnished by the proper officials to the electors, and were deposited and counted. *Held,* that while the action of the county clerk, in inserting in the local party column the names of candidates who had not been nominated and certified by that party, was, under the Election Law as amended in 1895 (Chap. 810, Laws of 1895), unauthorized and without right, it was a latent defect and did not disfranchise qualified and innocent voters who had used the official ballots so furnished them; and that, where the local party column had been duly crossed by voters to express their choice, the county board of canvassers should not be required to reject the ballots from the count for candidates so improperly included in that column.

1895.]        People ex rel. Hirsh *v.* Wood.        143

N. Y. Rep.]                Statement of case.

3. Official Ballots. The provision of section 105 of the Election Law as amended in 1895 (Chap. 810, Laws of 1895), that "none but ballots provided in accordance with the provisions of this act shall be counted," does not mean that no official ballots shall be counted except those prepared with strict conformity to the law by the officers charged with their preparation and printing.

4. Marked Ballots. An official ballot is not a marked ballot within the law because of any irregularity or defect in making it up or printing it.

(Argued December 12, 1895; decided December 19, 1895.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, made December 2, 1895, which affirmed an order of Special Term denying relator's application for a writ of peremptory mandamus.

The facts, so far as material, are stated in the opinion.

*Henry A. Monfort* for appellant. The ticket of " The Regular Democratic Party " was illegally filled up and completed by the insertion of the names of the candidates of the Democratic party for state and judicial offices. (Laws of 1895, chap. 810 ; *Fernbacher* v. *Roosevelt*, 14 Misc. Rep. 199.) The provisions of the amended Ballot Law relative to nominations, selection of emblems and the preparation of the official ballot, are of the very essentials of the law ; they are mandatory and may not be disregarded with impunity. (*People ex rel.* v. *Bd. of Canvassers*, 129 N. Y. 395 ; *Oglesby* v. *Sigman*, 58 Miss. 502 ; *Talcott* v. *Philbrick*, 59 Conn. 472 ; *People ex rel. Bd. of Canvassers*, 129 N. Y. 376 ; *People ex rel.* v. *Person*, 64 Hun, 327 ; *Price* v. *Lush*, 10 Mont. 61 ; *State* v. *Taylor*, 108 N. C. 196 ; 6 Am. & Eng. Ency. of Law, 348, § 8.) Not only were the votes in this case cast for the candidates for justices of the Supreme Court, by voting the ticket of the regular Democratic party, so cast in direct violation of mandatory provisions of the law relating to the nomination of candidates and the preparation of ballots, and are for that reason illegal and of no effect, but the legislature has expressly provided in the amendatory act that they shall not be counted. (Laws of 1895, chap. 810, § 105 ; 129 N. Y. 406.) It is urged

that although the action of the clerk was wrongful, the relator is concluded, since he did not appeal to the Supreme Court, or a justice thereof, under section 88 of the Election Law of 1892 (Chap. 680), to correct the error in printing the official ballots. This is untenable. (Laws of 1895, chap. 810, § 86; *Culross* v. *Gibbons*, 130 N. Y. 454.) Every ballot cast for judicial nominees by means of the ticket in question was a marked ballot. (Laws of 1895, chap. 810, §§ 114, 115, 118; *People ex rel.* v. *Bd. of Canvassers*, 129 N. Y. 407.) Mandamus is the proper remedy. (*People ex rel.* v. *Bd. of Canvassers*, 129 N. Y. 395, 431; *People ex rel.* v. *Person*, 64 Hun, 327; Laws of 1894, chap. 302; *People ex rel.* v. *Rice*, 129 N. Y. 460; Laws of 1892, chap. 680; Laws of 1894, chap. 302.)

*Elihu Root* and *Harrison S. Moore* for respondents. The Supreme Court had not, in this proceeding against the board of county canvassers, any authority to require that board to give effect to any matters of fact alleged by the relator, and which do not appear upon the record before the board. (Laws of 1892, chap. 680, § 133; Laws of 1894, chap. 302; *People ex rel.* v. *Rice*, 129 N. Y. 461; *People ex rel.* v. *Bd. of Canvassers*, 126 N. Y. 392; *People ex rel.* v. *Shaw*, 64 Hun, 356; 133 N. Y. 493; *Kortz* v. *Bd. of Canvassers*, 12 Abb. [N. C.] 84; *Deuchler Case*, 12 Abb. [N. C.] 77, 81; *Matter of Woods*, 5 Misc. Rep. 575; *People* v. *Cook*, 8 N. Y. 67.) The legality of the county clerk's action in printing the names which he did print in the "Regular Democratic Party" column on the Queens county official ballots cannot now be inquired into in any proceeding, because that question was finally determined according to law before the election. (Laws of 1895, chap. 810, §§ 56, 86, 88; Laws of 1892, chap. 680, § 88; *Briggs* v. *Bowen*, 60 N. Y. 454; *In re U. E. R. R. Co.*, 101 N. Y. 61, 72.) Even if the decision of the clerk to print these names in the column in question were erroneous, and if it could be reviewed in this proceeding, such an error would afford no ground for rejecting the ballots actually cast

by qualified electors. (Laws of 1895, chap. 810, §§ 84–87, 89, 104, 105, 109, 114.)

Andrews, Ch. J. This appeal is from an order denying the relator's motion for a writ of mandamus, requiring the county board of canvassers of Queens county in canvassing the votes cast in the county at the last general election to reject from the count all votes cast for justices of the Supreme Court at the election, by means of or by voting the ticket of "The Regular Democratic Party of Queens County," for the reason that no nomination of any candidates for those offices was made by the party and that no vote for any candidates for those offices could legally be cast by the use of such ticket. The moving papers allege that 681 votes of the character mentioned were cast at the election in ten election districts of Queens county by the use of the tickets of the party named for justices of the Supreme Court, whose names were printed in the column of that party, and that no nomination had been made by that party of candidates for these offices, but it had only nominated candidates for county and local offices. They further show that in many other election districts in the county similar tickets were voted, and that "in some instances the ballots by which said votes were cast, appear to have been objected to and are returned as marked ballots." The facts are undisputed. The "Regular Democratic Party of Queens County" was a faction of the Democratic party, and duly nominated local candidates, but made no nominations for state or judicial offices. The county clerk, nevertheless, having knowledge of the fact that that party intended to support the candidates of the Democratic party for state and judicial offices, inserted in the official ballot under its party name and emblem, the names of those candidates as well as the names of the local candidates it had nominated. We have decided at the present term in the case *In re Madden* that this action of the clerk was unauthorized, and that he had no right to insert in any party

19

column any names except those of candidates duly nominated and certified by such party.

The question is presented as to the effect of such unauthorized action by the county clerk upon the votes cast for justices of the Supreme Court by the use of the tickets of the " Regular Democratic Party." No suggestion is made that the persons who voted the ballots were not duly qualified electors. The ballots used were official ballots, provided by the county clerk, whose duty it was under the law to prepare, print and distribute them to subordinate officials, whose duty in turn was to place them in the hands of the inspectors of election of each election district in the county for use at the election. The printed indorsements, including the authentication by the county clerk required by the Election Law, appear in due form on the outside of the ballots. The ballots were regular in form in every respect. There was nothing within or upon the ballot from which a voter could know that the ballot was not made up in exact conformity to the law. It was impossible for him to ascertain from an inspection that the candidates for state and judicial offices, printed in the column of the " Regular Democratic Party," had not been regularly nominated by that party, or that the clerk, in arranging and printing the ballot, had not inserted the names with full authority. The .effort in this proceeding is to disfranchise innocent voters because of a latent defect in the official ballot furnished by the state, not discernible on inspection, which ballot they were compelled to use, the defect consisting in the unauthorized insertion therein by a public official, charged with the duty of making up and printing the ballots, of names of candidates in a party column not duly nominated by such party. The intention of the voters who used this party column to express their choice is clear and admits of no doubt. Each one received his ballot from the inspectors, marked it with the cross under the party name and emblem and returned it to the inspectors, by whom it was deposited in the box and subsequently counted. We can conceive of no principle which permits the disfranchisement of

innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult. There can be no justification for the claim in this case to disfranchise the 681 voters in Queens county who voted for state and judicial officers by using the party ticket and emblem of the " Regular Democratic Party of Queens County," unless by force of some imperative provision of statute, which admits of no other construction. It is claimed that such a provision is found in section 105 of the amendatory act, chapter 810 of the Laws of 1895, which declares that " no ballot without the official indorsement shall be allowed to be deposited in the ballot box except as provided by sections eighty-nine of the Election Law, and one hundred and nine of this act, and none but ballots provided in accordance with the provisions of this act shall be counted." This clause was designed to enforce the new system of the official ballot. It prohibits the deposit as well as the counting of any but official ballots, or the unofficial ballots authorized to be issued in the exigencies contemplated by section 89 of the Election Law and section 109 of the act of 1895. The words " none but ballots provided in accordance with the provisions of this act shall be counted," plainly mean the ballots provided for use by the public officials charged with that duty and substituted ballots authorized in certain contingencies to be provided and used in the cases specified in the sections referred to. One of these sections, section 89 of the Election Law, expressly makes it the duty of a town or city clerk to prepare substituted ballots where the regular ballots have not been delivered or have been lost or destroyed. The other section referred to, section 109 of the law of 1895, permits unofficial ballots to be used when official ballots are not provided or shall be exhausted. This

148     People ex rel. Hirsh *v.* Wood.     [Dec.,

Opinion of the Court, per Andrews, Ch. J.     [Vol. 148.

section does not require that the ballots authorized thereby shall be provided by an official. If the individual voter may, under the section (as seems to be the case), prepare his own ballot, the word *provided* in the clause quoted is not the most apt to embrace such a ballot. But the unofficial ballots authorized to be used, under section 109, are required to be, " as nearly as practicable, in the form of the official ballot." In the other cases some public official provides the ballot; under section 109 the voter may provide it. There is some obscurity in the interpretation of the clause quoted from section 105, but having in view its main purpose to enforce the use of official ballots, with the exceptions stated, the prohibition against counting, refers to ballots provided by the state and having official sanction, and the unofficial ballots authorized by the sections mentioned. It is impossible to suppose that the legislature used the word *provided*, as synonymous with *prepared*, so as to visit upon voters a forfeiture of the franchise if an official should make any departure in preparing the ballot from the strict authority conferred upon him.

There is no ground for claiming that the 681 ballots were marked ballots. They were not objected to on this ground at the canvass by the inspectors of election, and this is essential in order to subsequently raise the question. (Sec. 118, Election Law.) But if the objection had been made it would have been unavailing. The 681 ballots as printed were identical with all the ballots cast at the election. It might be possible, as is claimed, to ascertain on a count how many persons who voted the ticket of the Regular Democratic Party voted for the candidates for state and judicial offices of the Democratic party, and thereby the strength of the faction could be approximately known. But the same information would have been obtained if the ticket of the Regular Democratic Party had contained only the names of the local candidates and the voters had marked the names of the state and judicial candidates on the Democratic ticket. A ballot furnished by the state is not a marked ballot within the law because of any irregularity in making it up or printing it. Upon the merits, we think

the decisions of the courts below were clearly right. This leads to an affirmance of the order appealed from, and it becomes unnecessary to consider the question whether under the statute the form of an official ballot or any mistake of the clerk in arranging or printing the names of candidates, or as to the contents of a party column, can be raised after an election has been held, or the further question whether a mandamus may issue to compel a board of canvassers to reject ballots regular on their face. We leave these questions to be hereafter determined in case a necessity should arise for their decision.

The order of the General Term should be affirmed, with costs.

All concur.

Order affirmed.