(December 1, 1910.)

# JAMES B. McGRANE, Appellant, v. COUNTY OF NEZ PERCE, Respondent.

### [112 Pac. 000.]

ELECTION CONTEST—LOCAL OPTION ELECTION—FORM OF BALLOT—NUMBERING BALLOT—SECRECY OF BALLOT—DISTINGUISHING MARKS ON BALLOT—LEGALITY OF ELECTION.

### (Syllabus by the court.)

1. Sec. 1, art. 6, of the constitution provides that, "All elections by the people must be by ballot. An absolutely secret ballot is hereby guaranteed, and it shall be the duty of the legislature to enact such laws as shall carry this section into effect."

2. Under the provisions of sec. 1, art. 6, of the state constitution, it would not be within the power of the legislature to authorize and direct the numbering of ballots to be used at an election.

3. Under the provisions of sec. 408, Rev. Codes, "No ballot must be used or counted at any election except the legal ballot printed by the county auditor . . . . and distributed according to law by the distributing clerk within the polling-place. And no ticket must be distributed by the distributing clerk, or permitted to be used by the election officers, which has any mark or thing on the back or outside thereof, whereby it might be distinguished from any other ballot legally used on the same day."

4. Where an auditor of a county furnished ballots to the election officers of the several precincts of his county, and the ballots so furnished had been numbered consecutively from 1 to 15,000, and the number contained on each ballot corresponded with the number on the stub to that ballot, and the error, mistake, or wrongful act in numbering the ballots was not known to the electors, and the same was done without their knowledge or consent, and no opportunity was presented to the electors for having the error corrected, and the election was held by using such ballots in the several precincts of the county, the election will not be held void, either upon the ground that the numbering was an invasion of the constitutional secrecy of the ballot guaranteed to the people, nor upon the ground that the ballots contained distinguishing marks.

5. The prohibition contained in sec. 408, Rev. Codes, against election officers furnishing the electors with ballots containing distinguishing marks, is directed against the officers charged with the preparation and furnishing of the ballots, and directs and commands the officers as to the manner and method of discharging their public duties, but the statute nowhere prescribes that the penalty for vio-

lating this duty or a failure to faithfully discharge it shall be visited upon the electors or avoid the election.

6. To hold that the numbering of ballots by the election officers, who are charged with the preparation and distribution of election supplies and ballots, has the effect of rendering an election void, would place it within the power of the officers to disfranchise the entire electorate of their county, and prevent the holding of a valid and legal election, and would turn this statute safeguarding the elective franchise into an instrument of injustice and disfranchisement.

7. The purpose of the constitutional guaranty of "an absolutely secret ballot" and the statutory provisions against "distinguishing" marks on ballots is not so much to prevent marks and characters on ballots whereby it would be possible to distinguish the ballot of a particular elector, as it is the aim to prevent fraud, corruption, intimidation and oppression in elections and to so guard and hedge about the individual elector that he may vote his individual, conscientious and deliberate judgment without fear of anyone calling him to account therefor, and to prevent the corrupt voter from selling his vote and furnishing to the purchaser satisfactory visual evidence of the casting of the vote in accordance with the contract.

APPEAL from the District Court of the Second Judicial District, in and for Nez Perce County.   Hon. Edgar C. Steele, Judge.

Action by plaintiff to contest a local option election held in Nez Perce county.  Judgment for the defendant and plaintiff appealed.  *Affirmed.*

Chas. L. McDonald, and Eugene A. Cox, for Appellant.

"All provisions of the general election laws of the state of Idaho not in conflict with the terms of the local option statute are applicable to all elections held thereunder." (*Gillesby v. `County Commissioners*, 17 Ida. 586, 107 Pac. 71.)

The above citation settled two important propositions relative to elections in this state.  In the first place, the constitution has guaranteed, and the legislature, to make such guaranty effective, has enacted laws that give to every elector in the state the assurance that when he approaches the polls to declare his choice for men or measures, he does so knowing the action he takes cannot, and will not, ever be

disclosed, and that the absolute secrecy guaranteed relieves him from preceding intimidation or subsequent persecution.

Secondly, the idea of secrecy of the ballot is so essential to the purity of elections and their freedom from bribery, corruption and frauds, that not even the elector himself has a right to disregard it, and if he desires his vote counted, he must so prepare it that his choice cannot at the time of balloting nor subsequently be identified. (Wigmore's Australian Ballot System, 2d ed., pp. 50, 53.)

Numbering the ballots destroys their secrecy. (*Brisbin v. Cleary*, 26 Minn. 107, 1 N. W. 825; *Ritchie v. Richards*, 14 Utah, 345, 47 Pac. 670; Cooley's Const. Lim., 5th ed., 762; McCrary, Elections, sec. 453; Paine, Elections, sec. 535; *People ex rel. Smith v. Pease*, 27 N. Y. 45, 84 Am. Dec. 242; *Williams v. Stein*, 38 Ind. 89, 10 Am. Rep. 97.)

Statutes providing for a secret ballot are mandatory, and their terms must be complied with. (McCrary on Elections, sec. 226; *Ledbetter v. Hall*, 62 Mo. 422; *West v. Ross*, 53 Mo. 350; *Fields v. Osborne*, 60 Conn. 544, 21 Atl. 1070, 12 L. R. A. 551; *Slaymaker v. Phillips*, 5 Wyo. 453, 42 Pac. 1049, 47 L. R. A. 842; *State v. Connor*, 86 Tex. 133, 23 S. W. 1103; *Atty. Gen. v. McQuade*, 94 Mich. 439, 53 N. W. 944; *Ex parte Riggs*, 52 S. C. 298, 29 S. E. 645; *Clarke v. Hardison*, 40 Tex. Civ. App. 611, 90 S. W. 342; *Brigance v. Harlock*, 44 Tex. Civ. App. 277, 97 S. W. 1060; *Talcott v. Philbrick*, 59 Conn. 472, 20 Atl. 436, 10 L. R. A. 150.)

In construing a statute of this character the court must take into consideration what its purpose is, the aim it seeks to accomplish, and generally all the other statutes germane to, and bearing on, the subject. (*Taylor v. Bleakley* (Kan.), 49 Am. St. 233, note p. 243; 15 Cyc. 357, note p. 98.)

While it does not appear in the complaint affirmatively that the large number who refrained from voting at this election would have done so had there been a secret ballot, yet in view of the fact that no secret ballot could be had and this number did not vote, the court could not tell that they did not refrain from voting for this reason. (*Guernsey v. McHaley*, 52 Or. 555, 98 Pac. 158; *State ex rel. Birchmore*

*v. Board of Canvassers,* 78 S. C. 461, 59 S. E. 145, 14 L. R. A., N. S., 850, 13 Ann. Cas. 1133.)

Mandatory provisions of the statute violated by election officers render ballot illegal, notwithstanding elector not at fault. (*Kelly v. Adams,* 183 Ill. 193, 55 N. E. 837; *Caldwell v. McElvain,* 184 Ill. 552, 56 N. E. 1012; *Orr v. Bailey,* 59 Neb. 128, 80 N. E. 495; *Mauck v. Brown,* 59 Neb. 382, 81 N. W. 313; *Kelso v. Wright,* 110 Iowa, 560, 81 N. W. 805; *Conaty v. Gardner,* 75 Conn. 48, 52 Atl. 416; *Griffin v. Tucker* (Tex. Civ. App.), 119 S. W. 338; *Newhouse v. Alexander* (Okl.), 110 Pac. 1121.)

D. C. McDougall, Atty. Gen., O. M. Van Duyn, J. H. Peterson, and D. E. Hodge, for Respondent.

An examination of the complaint herein shows that there is no allegation whatsoever of any malconduct, fraud or corruption of any of the parties named in subd. 1, sec. 5026, Rev. Codes. In fact, there is no allegation of any malconduct upon the part of any person. So this contest cannot be brought under said subdivision of said section. (*Farnham v. Boland,* 134 Cal. 151, 66 Pac. 200; *Freshour v. Howard,* 142 Cal. 501, 77 Pac. 1101.)

Even if contestant may contest upon the ground that certain parties were deterred and intimidated from voting, it would be necessary to allege and prove who the parties were and that they would have voted "wet" or differently from the declared result. (15 Cyc. 405, 406; *Cole v. McClendon,* 109 Ga. 183, 34 S. E. 384; *Lowrey v. Cheatham,* 131 Ga. 320, 62 S. E. 226.)

All acts violating the secrecy of the ballot do not invalidate the election. Acts for which the voter is not responsible do not affect the election, even though the secrecy of the ballot might be violated. (*Farnham v. Boland, supra; Freshour v. Howard, supra; Perkins v. Bertrand,* 192 Ill. 58, 85 Am. St. 315, 61 N. E. 405; *Peabody v. Burch,* 75 Kan. 543, 89 Pac. 1016, 12 Ann. Cas. 719; *Pennington v. Hare,* 60 Minn. 146, 62 N. W. 116; *Carwile v. Jones,* 38 Mont. 590, 101 Pac. 153; *Lindstrom v. Bd. of Commrs.,* 94 Mich. 467, 54 N. W. 280, 19 L. R. A. 171.)

"If identifying marks are placed on a ballot without the knowledge or consent of the voter, it does not render the ballot void, nor prevent it from being counted; but if it is done by the voter in preparing his ballot, it is a violation of law, and the ballot should not be counted." (*Whittam v. Zahorik*, 91 Iowa, 23, 51 Am. St. 317, 59 N. W. 57; *People v. Board of Supervisors*, 135 N. Y. 522, 32 N. E. 242; *State v. Sadler*, 25 Nev. 131, 83 Am. St. 573, 58 Pac. 284, 59 Pac. 546, 63 Pac. 128; *State v. Gay*, 59 Minn. 6, 50 Am. St. 389, 60 N. W. 676; *Hannah v. Green*, 143 Cal. 19, 76 Pac. 708; *Atty. Gen. v. McQuade*, 94 Mich. 439, 53 N. W. 944; *Town of Eufaula v. Gibson*, 22 Okl. 507, 98 Pac. 565; *Winn v. Blackman*, 229 Ill. 198, 120 Am. St. 237, 82 N. E. 215; *In re Town of Groton*, 118 N. Y. Supp. 417, 63 Misc. 370; *People v. Wood*, 148 N. Y. 142, 42 N. E. 536; *Baker v. Scott*, 4 Ida. 596, 43 Pac. 76; *State v. Fransham*, 19 Mont. 273, 48 Pac. 1.)

AILSHIE, J.—On the 15th of January, 1909, the commissioners of Nez Perce county made and entered an order calling an election in the county of Nez Perce to determine whether or not intoxicating liquors should be sold as a beverage in that county. The election was called to be held on the 9th day of March following. Ballots printed under the direction of the county auditor and by him distributed to the election officers of the several precincts of the county were in the following form:

Nez Perce Coenty Local Option
Election, March 9th, 1910

№ 3403

№ 3403

**LOCAL OPTION ELECTION**

"Shall the sale or disposal of intoxicating liquors as a beverage be prohibited in the County of Nez Perce, Idaho?"

| YES | | NO |

This ballot complied with the requirements of law with the exception that it should not have been numbered. The statute, sec. 405, Rev. Codes, provides for numbering the stub but does not authorize the numbering of the ballot. According to the complaint, the fact that the ballots had been numbered was not discovered by the electors generally or by anyone except the auditor and printer, and possibly some of the election officers, prior to the opening of the polls on election day. The election was held and resulted in 3,444 votes being cast in favor of the proposition submitted and 2,612 votes against it. The record shows that 10,388 qualified electors were registered and were entitled to vote at this election, and that the total number of votes cast was 6,050.

It is alleged that this ballot did not afford the plaintiff and the electors generally of Nez Perce county the right of a secret ballot, and that it was in violation of sec. 1, art. 6, of the state constitution, which provides: "All elections by the people must be by ballot. An absolutely secret ballot is hereby guaranteed, and it shall be the duty of the legislature to enact such laws as shall carry this section into effect." It is also alleged that since these ballots were numbered consecutively from one to somewhere in excess of 15,000 and were distributed in consecutive order, it was possible for the election officers and others to identify the ballot cast by any elector, and thereby destroyed the secrecy of the ballot guaranteed to the elector by the constitution. It is also alleged that this means of identification resulted in intimidating some voters so that they refused to vote at all, while others were not able to vote their deliberate convictions for fear of their ballots being identified and thereby exposing them to censure and obloquy from those who voted differently or who were advocating the opposite side of the question. It is further alleged that these numbers constituted identifying and distinguishing marks on the ballots in violation of the statute, sec. 408, Rev. Codes.

The defendant demurred to the complaint, and the demurrer was sustained and judgment was thereupon entered

against the plaintiff, from which this appeal has been prosecuted.

Now, in the first place, the constitution of this state, sec. 1, art. 6, *supra*, guarantees to the electors "an absolutely secret ballot," and counsel argue that the legislature could not constitutionally enact an election law which would provide for and authorize the numbering of ballots, and that if the legislature could not authorize such a ballot it must necessarily follow that election officers, exercising the political power of the state, cannot furnish the electors with such ballots, and thereby deprive them of the absolute secrecy of their ballots. This proposition requires a brief analysis to detect whether it be sound or faulty. In the outset, it is perfectly safe to say that the legislature would have no authority under this constitutional guaranty to require the numbering of the ballots. The authorities to that effect are quite uniform. (*Brisbin v. Cleary*, 26 Minn. 107, 1 N. W. 825; *Ritchie v. Richards*, 14 Utah, 345, 47 Pac. 679; *Williams v. Stein*, 38 Ind. 89, 60 Am. Rep. 97; *Smith v. Pease*, 27 N. Y. 45; Paine on Elections, chap. 453; McCreary on Elections, secs. 194, 195, 400 and 413.) Now that it must be conceded that the legislature could not, in the exercise of its constitutional power, direct the numbering of ballots, the final and decisive question recurs: Is an election valid where the ballots have been numbered without the knowledge or consent of the electors and the electors themselves are innocent and free from fault?

The local option statute (sec. 10) makes the general election laws applicable to the printing of tickets and furnishing supplies in connection with holding an election. (See *Gillesby v. Board of Commrs.*, 17 Ida. 586, 107 Pac. 71.) Sec. 408 of the Rev. Codes provides that, "No ballot must be used or counted at any election except the legal ballot printed by the county auditor . . . . and distributed according to law by the distributing clerk within the polling place. And no ticket must be distributed by the distributing clerk, or permitted to be used by the election officers, which has any mark or thing on the back or outside thereof whereby it

might be distinguished from any other ballot legally used on the same day . . . . no elector shall be permitted to vote any other ballot than the one he received from the distributing clerk.'' It is alleged and conceded that these ballots were furnished by the county auditor and were the only ballots furnished for this election. All the ballots used throughout the county were open to the same objection, namely, that they were numbered. No two ballots contained the same number, but the numbering was consecutive from 1 to 15,000, and the ballots were furnished to the different precincts in books of 100 each. The ballot in each instance contained the same number contained on the stub from which that ballot was taken. Again, it must be conceded that under the provisions of this statute, sec. 408, the auditor was forbidden to furnish ballots that were numbered, and likewise the election officers were forbidden to distribute to the electors ballots that contained distinguishing marks. These numbers were not on the back of the ballots. There was in fact no distinguishing mark on the back of the ballot; the numbering was on the face of each ballot.

The question of numbered ballots has frequently been before the courts of states where a secret ballot is guaranteed, and so we turn to the decisions for light on this question. In *Farnham v. Boland,* 134 Cal. 151, 66 Pac. 200, the supreme court of California had under consideration the question as to whether a ballot should be counted where the numbered stub had been left attached to the ballot, thus furnishing the same facilities for identifying the ballots as were furnished in this case. The court said:

''We hold that these ballots were properly counted, and likewise those were properly counted which the officers of election placed in the ballot-box without first tearing therefrom the numbers attached. It is quite apparent that these violations of the law arose from the carelessness of the election officers. Such carelessness or malconduct upon the part of those officers may render them liable to severe penalties, but that is all. The law as to identifying marks refers to marks

made by the voter, and it is only marks made by him that demand the rejection of the ballot. After citing many cases to the point, this court said in *People v. Prewett*, 124 Cal. 13, 56 Pac. 621: 'The principle underlying these decisions is that the rights of the voters should not be prejudiced by the errors or wrongful acts of the officers of election, unless it shall appear that a fair election and an honest count were thereby prevented.' ''

The same question again arose in California in the case of *Freshour v. Howard*, 142 Cal. 501, 77 Pac. 1101, and the court quoted with approval from *Farnham v. Boland*, and also from *People v. Prewett*, 124 Cal. 13, 56 Pac. 621, and said: ''The failure or neglect through ignorance or carelessness on the part of the precinct election officers, to remove the number of the ballot, did not have the effect to make the ballot illegal on the ground of a distinguishing mark placed thereon by the voter.''

As late as 1909 the question of numbered ballots came before the supreme court of New York in *Re Town of Groton*, 63 Misc. 370, 118 N. Y. Supp. 417, over an election wherein the ballots were numbered on the back. The court in disposing of the matter said:

''These ballots were all alike in the respect complained of, those cast for and those against the propositions. The election officers counted them all, determined that they were valid, no one raising an objection or suggestion to the contrary. The ballots plainly disclosed to each voter this defect, and every voter could plainly see the error in the printing of the ballot; but it does not appear that anyone made objection. Quite possibly the voters favoring license, or the advocates and leaders of that side of the question, thought the defect would tend to their advantage; and perhaps it did. At any rate, they did not protest to the election officers, either before or at the canvass of the votes. They waited until the votes were cast and all counted and allowed, and until the result was declared and the official certificate thereof made and filed, showing a majority for 'no license,' and that the petitioner and those favoring license were defeated.

Then they made their protest and complaint. Manifestly their protest should not be allowed unless the law requires it. Section 88 of the election law (Laws 1896, p. 947, c. 909) provides for the correction of the ballots when the error is timely brought to the attention of the officer charged with the duty of preparing them. It cannot be the purpose of the law to afford an opportunity for those interested in the result to proceed to a vote and count, without objection or protest, and then, when the result is adverse to their wishes, to give them another chance upon a palpable error which could have been corrected had they called attention to it; but, aside from the absurdity of such a holding, the principles enunciated in *People ex rel. Hirsh v. Wood*, 148 N. Y. 142, 42 N. E. 536, are applicable to this proceeding and sufficient to require a denial of this application. It is there said (page 146 of 148 N. Y., page 537 of 42 N. E.): 'We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the wilful misconduct of election officers in performing the duty cast upon them.' "

In *Winn v. Blackman*, 229 Ill. 198, 120 Am. St. 237, 82 N. E. 215, decided in 1907, the supreme court of Illinois was called upon to determine what constituted distinguishing marks as the same were contained on ballots used at a general election. In the course of a somewhat extended and interesting discussion of the matter, the court said: "The distinguishing mark prohibited by law is such a mark as will separate and distinguish the particular ballot from other ballots cast at the election. It is some sort of a mark put upon the ballot to indicate who cast it and to furnish the means of evading the law as to secrecy. . . . . In order to warrant the rejection of a ballot because of a distinguishing mark, the court should be able to say that such mark was placed there by the voter for the purpose of distinguishing his ballot from others."

In *McClelland v. Erwin*, 16 Okl. 612, 86 Pac. 287, the supreme court of Oklahoma, in considering what constituted a distinguishing mark made on a ballot, said:

"We think that, to constitute a distinguishing mark, the mark, whether made by the use of a letter, figure, or character, should be such a mark as shows an intention on the part of the voter to identify or distinguish his particular ballot from others of this class, and any marks inadvertently made on a ballot, or made through carelessness or ignorance, which does not show upon the face of the ballot that such mark was made with the intention of distinguishing that ballot from others of the same class, or that that result would be accomplished by the mark, should not be treated as a distinguishing mark. Human experience teaches us that it is often very difficult to preserve absolute cleanness and neatness of the ballot; that in marking the various names on the ballot with the device provided by the election officers, a man will through inadvertence or carelessness place a stamp where it is not intended to be, and on discovering the error will immediately correct it, and at the same time this inadvertent or careless marking will not be done with the intention of identifying this particular ballot, nor will such be the result, nor do we think that the law should be so strictly construed as to render, in the absence of fraud, such a ballot illegal."

The same court as late as 1908 in *Town of Eufaula v. Gibson*, 22 Okl. 507, 98 Pac. 565, quoted and approved the foregoing language from the McClelland case, and in course of the opinion added the following observation: "A voter ought not to be disfranchised and his ballot rejected where, as in this case, an election official improperly marks or numbers it, when it is not shown when it was done or that it was done with the connivance, consent, or knowledge of the voter, and for the purpose of distinguishing it."

Connecticut was one of the first states of the Union to adopt what is popularly known as the Australian ballot system, and in view of that fact it is worth while observing that in the case of *Coughlin v. McElroy*, 72 Conn. 99, 77 Am. St. 301, 43 Atl. 854, the court in considering distinguishing marks affecting the secrecy of the ballot, said: "Marks upon the face of ballots, which appear or are shown to have been made accidentally and not for the purpose of indicating the

voter, and changes for the existence of which a reasonable explanation consistent with honesty and good faith either appears upon the face of the ballot or is shown by proof do not render the ballots void." And to the same effect was the holding of the supreme court of Nebraska in *State v. Russel,* 34 Neb. 116, 33 Am. St. 625, 51 N. W. 465, 15 L. R. A. 740, wherein it was said: "It is not every mark by means of which a ballot might subsequently be identified which is a violation of the statute. The mark prohibited by law is such a one, whether letters, figures, or characters, as shows an intention on the part of the voter to distinguish his particular ballot from others of its class, and not one that is common to, and not distinguishable from, others of a designated class."

In *Pennington v. Hare,* 60 Minn. 146, 62 N. W. 116, the supreme court of Minnesota says: "In the eighth precinct of the ward, ninety-three ballots were cast and counted for the appellant, and forty-two for the respondent, which had been numbered without the knowledge of the electors casting them, by the judges of election, by reason of a misunderstanding of the law on their part. These ballots were properly counted for the respective parties. To hold otherwise would place it in the power of the election officers to disfranchise electors at their pleasure." (See *Parker v. Hughes,* 64 Kan. 216, 91 Am. St. 216, 67 Pac. 637, 56 L. R. A. 275; *Perkins v. Bertrand,* 192 Ill. 58, 85 Am. St. 15, 61 N. E. 405; *Carwile v. Jones,* 38 Mont. 590, 101 Pac. 153; *People v. Wood,* 148 N. Y. App. 142, 42 N. E. 536; *Peabody v. Burch,* 75 Kan. 543, 89 Pac. 1016, 12 Ann. Cas. 719.)

Authorities might be multiplied to the foregoing effect, and it will be noted from an examination of them that while they all hold that numbering or other distinguishing marks on a ballot is contrary to both the letter and spirit of the law guaranteeing a secret ballot, nevertheless this alone will not justify the rejection of the ballot upon the canvass of votes, unless it appears that the numbers were placed there, either by the voter for the purpose of designating and distinguishing his vote, or by someone else with his knowledge and consent

and with the intention of accomplishing such purpose. While our statute, sec. 408, *supra,* prohibits the election officers furnishing or distributing ballots containing such distinguishing marks, they have nevertheless done that very thing in connection with holding the election now under contest. It is not difficult to say in advance of their action what they *should have done* and *should not have done.* The law is clear, and it was the unmistakable duty of the officers to follow its mandates, but we are now confronted with a condition and not a theory. They have acted, and the election has been held. The electors have cast their votes. The electors have already been subjected to the predicament of casting their votes under circumstances which at least rendered it possible for the secrecy of their ballots to be invaded. This was done solely by and through either the negligence or wrongful act of the printer or officers charged with the preparation and furnishing of the ballots. The law does not say that an election shall be void under such circumstances. It does not speak of the condition after it has arisen, but contains directions and commands to the officers as to how they shall act, and these directions and commands are given in advance of the election. After all these things have occurred, the question arises as to whether the court shall visit the results and penalties of the negligence or wrongdoing of the election officers upon the innocent electors and declare their votes illegal and the election void, and thereby rob the people of their right of suffrage until the time arrives for another election. The question is simply reduced to this: Shall the electors be visited with two invasions of their rights instead of one? Shall they be deprived of the right of suffrage for the time being because their officers have acted negligently or wrongfully in the preparation of ballots, or shall the election be sustained and the penalties, if any, be visited upon the parties responsible for the errors or wrongs which have been committed? The same rule that will apply to numbered ballots in this election will necessarily apply in a general election. Now, if a general election is to be held void on account of such an error on the part of the election officers which extended throughout the

county and into every precinct thereof, we would have the anomalous condition of the officers of a county who might not have succeeded in being renominated for their respective offices, or who feared they might not be re-elected, furnishing the electors with numbered ballots so as to avoid the entire election, and thereby enable the officers to hold over for two years in the very offices for which the election is being held to elect their successors. This would be allowing the officers to profit by their own mistake or wrong and placing a double penalty upon the people. Under the laws of this state, a general election can only be held biennially, and so if it is not held on the day fixed by law, there will be no other general election for two years thereafter, and in the meanwhile the old officers will hold until their successors are elected and qualified. (Rev. Codes, sec. 32a.) .

While we are obliged to condemn in unqualified terms the ballots used in this election and hold that they were not in conformity with law in that they were numbered, we also hold that the electors of Nez Perce county were not chargeable with this error or mistake, and that the wrong of the officers cannot be visited upon the electors so as to deprive them of the right of suffrage where the electors themselves have not been parties to the wrong. Two *wrongs* will no more make a *right* in law and government than in morals. To follow up the wrongful preparation of ballots with setting aside the election would only be adding another injury to an already outraged electorate.

Attention is also called to the provisions of sec. 407 of the Rev. Codes, which provides as follows: ''Whenever it shall appear by affidavit that an error or omission has occurred in the publication of the names or descriptions of the candidates nominated for office, or in the printing of the tickets, the probate court of the county may, upon application of any elector, by order, require the county auditor or municipal clerk to correct such error, or to show cause why such error should not be corrected.'' This section provides for the correction of just such errors as occurred in this case on application to the probate judge of the county. Of course, accord-

ing to the allegations of the complaint, the electors did not discover the error until the polls had opened, and of course the provisions of this section would not have been available to accomplish any real results at this present election. It does show, however, that the purpose of the lawmakers was to provide for correcting such errors and mistakes as this that might occur in the preparation of ballots.

At this point it is well to observe that no contention is made that the secrecy of the ballot of any elector was actually invaded, or that the vote of any person has been in fact identified or disclosed. The whole complaint made is that it was rendered possible, and not that the thing was actually accomplished, nor is it contended that it was done with a *purpose* of invading the secrecy of the ballot or that the printer who printed the ballots or the officers who furnished them did so *wrongfully, intentionally* or *criminally,* or that it was anything other than a negligent act or mistake. While the constitution guarantees "an absolutely secret ballot," it is nevertheless true that "absolute" secrecy is practically impossible under the prevailing method of printed ballots which are delivered to the elector and which he is permitted to handle and on which he may mark his choice with a pencil. The law tells him just where and how he shall mark his choice of candidates, and the statute of this state also directs that there shall be a blank column printed on the ballot wherein the elector can write the names of any persons he desires for any particular offices, and it is also true that in many of the precincts of the several counties no nominations for precinct officers are usually made, and the electors are authorized to write upon the ballot in the proper place their choice for justices of the peace and constable. Now, it is quite clear that the handwriting of almost any elector may be identified, not only by the person himself, but by others who are acquainted and familiar with his handwriting. It is not only true that identification may be had through this means, but it may be made by the manner or method of marking the ballot, and yet those marks may have been made in substantial compliance with the statute. Again, the man fresh from the

field, the forge, the carpenter-shop, or the mason's trade, may leave the imprint of his fingers on his ballot so that not only he but the election officers and bystanders may be able to identify the ballot, and still this has been done unintentionally and innocently, and without any purpose or intent of leaving distinguishing marks upon the ballot. The purpose of the law in pronouncing against distinguishing marks and requiring secrecy was to guard against the corrupt voter selling and delivering his vote to the vote purchaser, so that he might not identify the article that he was selling to the purchaser. A man who will corrupt a voter will not trust to the mere word of that voter as to whether he has delivered the vote according to contract. He will want some visual evidence of the performance of the contract before he parts with the consideration. These are some of the things the law intends to protect the people at large against, and at the same time it intends to guard the individual elector from intimidation and undue influence and greater temptation than he is able to withstand. It leaves the voter so that he does not run the risk of losing a position, being thrown out of employment, or subjected to various annoyances on account of having cast his vote in a given way or having failed to vote as he had promised to do. Under this method there is no way of knowing whether he will vote as he promises, and but little inducement for extracting from him a promise at all.

We conclude that the judgment of the trial court should be affirmed, and it is so ordered. Costs awarded in favor of respondent.

Sullivan, C. J., concurs.