In the Matter of PATRICK J. HANNIGAN, Petitioner, against WILLIAM J. HEFFERNAN et al., Constituting the Board of Elections of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, September 20, 1946.

*James G. Donovan* for petitioner.

*John J. Bennett*, Corporation Counsel (*Thomas W. A. Crone* of counsel), for William J. Heffernan and others, constituting the Board of Elections, respondents.

*Allen Goodwin* for Vito Marcantonio, respondent.

BOTEIN, J. The petitioner, Patrick J. Hannigan, a candidate for the Democratic nomination for Representative in Congress in the 18th Congressional District, seeks an order for a recanvass and re-examination of ballots in that district. His opponent, Vito Marcantonio, received 9,841 votes and he received 9,276 votes, resulting in a plurality for Marcantonio of 565 votes.

There are 130 election districts in the 18th Congressional District. Charges of irregularities are limited to the conduct of the election in the sixty-four election districts which form the upper half of the Congressional District, and in which Hannigan was badly beaten. No charges are made concerning the sixty-six election districts in the lower half of the district, where Marcantonio was badly beaten. In the sixty-four districts wherein the results are questioned, the total vote cast was 8,732, including blank and void ballots.

The principal claim of the petitioner is that 225 votes were cast in excess of Democrats signing the primary register. From this alleged circumstance the petitioner draws an inference of ballot stuffing. I find that in twenty-five instances persons who

were not enrolled Democrats, such as enrolled members of the Republican and American Labor Party, were permitted to vote. I can draw no inference of fraud from this fact. Had these been twenty-five " floaters ", they would have assumed fictitious names or used the names of enrolled Democrats.

I find that less than a dozen ballots, out of the 8,732 cast in this half of the district, cannot be matched with a signature. In all other cases, the authentic signatures of the enrolled Democratic voters were located, and they were unquestionably signed on Primary Day. Some signed on the wrong lines, some in the 1945 registration books.

The petitioner next claims that ninety-eight Democrats signed the registers in excess of the ballots cast. The inference sought to be drawn from this fact is that someone removed ballots illegally from the polling places. A check of the signature books indicates that there are no excess Democratic signatures and would seem to demolish completely the petitioner's contention in this regard.

Petitioner next alleges, without dispute, that there were no tally marks on the tally sheets returned to the Board of Elections from seven districts. A comparison of the tally sheets with the police returns reveals that with minor discrepancies the ballots are all accounted for, and the figures in all three returns seem to agree in most particulars and corroborate each other.

A great number of clerical irregularities in the ballot returns are cited by the petitioner. These are unsubstantial, sometimes favoring Hannigan and sometimes Marcantonio, but in the aggregate not affecting the final returns by ten votes. To detail them would require more space than is warranted. They are present in returns filed from districts throughout the city. An official of the Board of Elections testified that he encountered great difficulty in securing personnel of the required calibre to man the election boards. He deplored specifically the turnover in employment from year to year and the substitutions within a given year, all contributing to inexperienced and inept help. The wonder is that under such circumstances the returns check as well as they do.

The petitioner claims that seventy-eight persons voted from a building which had long been demolished by Primary Day. There were some revisions of this figure, but it is conceded that there were forty-two votes cast from such addresses. There is no claim that these voters had not appeared at the polls in person, nor was any proof submitted that they no longer reside

in the respective election districts. I cannot therefore draw any inference of widespread or planned fraud from these facts.

The only other major objection raised by the petitioner is that in three election districts the voters signed the 1945 register books instead of the primary signature books. Voters are presumed to sign these register books when they register and when they vote at the general elections. The 1945 register book was supposed to be used in conjunction with the 1946 primary signature book. In the former, in column 14, should be noted the party of the registrant, if he enrolls, and in column 15 his ballot number on Primary Day. When his right to vote on Primary Day is verified by recourse to the 1945 book, the voter is supposed to sign the primary signature book. In three districts the Board of Inspectors caused the voters to sign in column 32, the column to the extreme right of the 1945 register book, entitled "Remarks". No claim is made that the third signature in this book does not in every instance bear comparison with the other two, or that ballot numbers were not properly assigned to duly qualified voters.

To hold void the votes cast under these circumstances would be tantamount to disenfranchising the voters for the negligence of the inspectors. As was said in *Matter of Norton* (152 App. Div. 628, 632): "If a failure to observe every provision of law relating to the conduct of elections and the acts to be performed by election officers were allowed to avoid an election, very few elections would stand. It is the result of the vote which must control, and the expressed will of the electors cannot be invalidated by reason of the carelessness of election officials." (See, also, *People ex rel. Hirsh* v. *Wood,* 148 N. Y. 142, 146.) The conclusion is irresistible that the will of the electors in these three districts was expressed as fully through the medium of signing their names in the 1945 register book as it would have been through signing the 1946 primary signature book.

The specific objections recited in the schedules annexed to the petition seek to invalidate in all 472 signatures. A number of these objections were withdrawn during the hearings, and extensive concessions of fact were made. After canceling out such objections, I find the votes affected have been whittled down to slightly more than 100. This is a far cry from the 565 plurality of Marcantonio. No evidence whatsoever has been introduced of electioneering, coercive tactics or any other form of improper or illegal conduct at the polls.

Accordingly, motion made to dismiss the petition at the conclusion of the hearings is granted.