Michael Catalano, J.
These three proceedings were tried together. In the first, Hailey seeks an order directing the board to certify him as the successful candidate for the office of Supervisor of the 15th Ward in the City of Niagara Falls. In the second, Maerten would be certified by the board as the successful candidate for the office of Justice of the Peace of the Town of Pendleton. In the third, Treadwell wants to be certified instead of Hailey.
Hailey was the Democratic and Liberal candidate for Supervisor, 15th Ward, City of Niagara Falls. Treadwell was the Republican candidate therefor, and Maerten was the Democratic candidate for Justice of the Peace, Town of Pendleton, at the general election of November 7, 1961. Thereafter, the inspectors of elections of the 15th Ward certified 1,943 votes for Treadwell and 1,931 for Hailey. The Treadwell votes consisted of 1,923 voting machine votes, and 20 absentee ballot votes of which 10 were military ballot votes. Hailey received 1,924 voting machine votes, 7 absentee ballot votes of which 2 were military ballot votes. Thus, if all absentee ballot votes were void, Hailey would win by 1 vote; if the nonmilitary absentee ballot votes were void, Treadwell would win by 4 votes; if all votes were valid, Treadwell would win by 12 votes.
The only votes questioned are the absentee ballots.
On November 14,1961, the board attempted to recanvass these absentee ballots. At that meeting Grormley refused to canvass the votes, then voted to void all absentee ballots; Myles voted to hold them valid. Later, both agreed to canvass the votes, during which oral protests and objections were made to certain ballots but the record does not disclose which ballots were being questioned. Finally, Grormley and Myles adjourned the meeting to a future date to make a decision, but none was ever made.
The Supreme Court has summary jurisdiction to direct a recanvass or correct any error in the canvass of ‘ ‘ any protested or rejected absentee voters’ ballots ” (Election Law, § 330, subd. 4).
Hailey and Maerten contend that all 27 absentee ballots are void because the board failed to give the chairman of each political party in the County of Niagara a list of all applicants *652 to whom absentee voters’ ballots have been sent, citing subdivision 11 of section 118 of the Election Law. It was stipulated that none were sent.
Article 5 of the Election Law, entitled ‘ ‘ Forms of ballots and returns; absentee voting; preservation of books and papers,” contains section 118, entitled, “Determination upon absentee voters’ application for ballots; delivery of ballots,” subdivision 11 which provides: ‘ ‘ The board shall keep a record of applications for absentee voters ’ ballots as they are received, showing the names and residences of the applicants, and, as soon as practicable, shall give to the chairman of each political party in the county a complete list of all applicants to whom absentee voters’ ballots have been delivered or mailed, containing their names and places of residence as they appear in the register or on the registration record, as the case may be, including the election district and ward, if any, and in the city of New York, the assembly district.”
The Legislature was authorized to enact section 118 of the Election Law, by constitutional-enactment. (N. Y. Const., Art. II, ‘ ‘ Suffrage, ” § 2, “ Absentee voting. ”) This section provides an opportunity for investigation previous to election, requiring the board to keep a record of applications for absentee ballots and to furnish a list thereof as soon as practicable to the chairman of the county committee of each party.
Here, the board kept the record for all the world to see, but it did not furnish any list to any chairman. Obviously, the primary reason for providing the chairman with lists is for their personal convenience. Lists could have been made at any time by the chairmen or their representatives in order to prepare grounds for objecting to the voting of the ballots on Election Day. No objection was made by anyone to the 27 absentee ballots on Election Day. Therefore, the failure to deliver these lists to the chairmen did not, per se, void the absentee ballots, thereby disfranchising the innocent voters.
The time to object to the voting of absentee ballots is when they are examined by the inspectors “ immediately after the closing of the polls ” (Election Law, § 204, subd. 1). Any person present in the polling place may object upon certain grounds. (§ 204, subd. 2.) The absentee vote cannot be questioned after election where the vote has been received without objection at the examination of inspectors. (Sheils v. Flynn, 275 N. Y. 446, 452.)
It is only when absentee voters’ ballots are protested or rejected that this court may direct a recanvass or correct any error in the canvass thereof. (Election Law, § 330, subd. 4.) *653 Here no proper protests were made, but by failing to accept any of the votes for Hailey and Treadwell at the alleged recanvass by the board, these absentee ballots were rejected. So, this court has jurisdiction to make such order as justice may require. (§ 330, opening sentence.)
Justice dictates that innocent voters shall not be disfranchised for the mistake or willful misconduct of election officials in failing to do their duty; that the purpose of elections is to ascertain popular will, not to destroy it; that the Election Law was enacted to guarantee the right to vote and prevent fraud, not to make it unreasonably technical and difficult in voting. (People ex rel. Hirsh v. Wood, 148 N. Y. 142, 146-147; Matter of Buechel v. Bosco, 9 A D 2d 916.)
Article 12 of the Election Law, entitled “ Voting by members of Armed Forces,” contains section 305, entitled, “ Registration of military voters,” subdivision 7 of which provides: “ The board of elections shall cause a list of names and home addresses of military voters appearing on such registers to be prepared not later than November third, nineteen hundred sixty-one, and shall transmit one copy to the chairman of each political party in the county upon written request. In the city of New York, the board of elections shall, upon like request, deliver one copy of the said list to the chairman of each political party in each county within the city. One copy shall be kept at the office of the board of elections for public inspection. One copy shall be transmitted to the division for servicemen’s voting, department of state, not later than December first, nineteen hundred sixty-one.” (Emphasis supplied.)
The Legislature declared its purpose to guarantee to every voter of this State in the actual military service and his spouse, parent and child, if qualified, the right to vote. (Election Law, § 300, “ Declaration.”)
Thus, the Legislature has imposed two different duties upon Boards of Election; as to nonmilitary absentee voters’ ballots, the board shall give the chairmen a list of such voters without any request, but as to military absentee voters’ ballots, such list shall be given upon written request. (Of. Election Law, § 118, subd. 11; § 305, subd. 7.)
This is not all. The Board of Elections shall canvass the returns of primary elections filed with it, then, upon request of the chairman of the State committee of each political party, shall furnish to him a list of the members of the State committee duly elected. (Election Law, § 270, subds. 1, 4.)
It is no wonder that the board in this case failed to send such a list of absentee voters to the chairmen of the county; a neglect *654 of at least 14 years, without any complaint in this county by any chairman.
Subdivision 11 of section 118 of the Election Law, in any event, affords this service to a chairman of receiving a list of these absentee voters without request, but does not include a candidate as barring any right to object to such a failure in the absence of any chairman joining as a party in the proceeding before the court.
Here, no chairman of any political party is a party to any of the three proceedings herein. It follows that Hailey and Maerten, as candidates, are not real parties in interest qualified to complain about such omission by .the board. Treadwell, another candidate, makes no such complaint.
An inspection of the absentee voters’ ballots in this case for the 15th Ward shows:

Treadwell Hailey

Military Civilian Military Civilian

1st District......... 2 2 3
(1 torn)
2nd District......... 2 3 1
(1 torn)
3rd District......... (2 missing) 1 1
4th District.........(1 marked) (3 marked)
7th District......... 2 2
6 7 15
Total ballots for Treadwell 13, of which 6 are military.
Total ballots for Hailey 6, of which 1 is military.
Five ballots for Treadwell are void; 1 is torn, 4 marked.
One ballot for Hailey is void; it is torn. Two alleged ballots for Treadwell are missing.
Thus, the concluding votes for Treadwell are machine votes 1,923 and ballot votes 13, or a total of 1,936; for Hailey are machine votes 1,924 and ballot votes 6, or a total of 1,930. The plurality for Treadwell is 6.
Tom or marked civilian ballots, with other than check marks or cross marks in voting squares or circles, are void. (Election Law, § 212.) Marked military ballots with other than check marks or cross marks in voting squares, are void. (Election Law, § 307, in which the word “ circle ” is omitted.)
*655 An inspection of the absentee voters’ ballots for the Town of Pendleton shows:

Maerten Choate

Military Civilian Military Civilian

1st District......... 1 1 2
2nd District......... 2
3rd District......... 1
1114
Total ballots for Maerten 2, of which 1 is military.
Total ballots for Choate 5, of which 1 is military.
All ballots are valid. Choate wins.
Therefore, Elwood F. Treadwell is elected Supervisor of the 15th Ward in the City of Niagara Falls and should be certified; Millard Choate was properly certified as the duly elected Justice of the Peace for the Town of Pendleton.
It follows that Proceeding No. 1 instituted by petitioner Hailey is denied; Proceeding No. 2 instituted by petitioner Maerten is denied; Proceeding No. 3 instituted by petitioner Treadwell is granted; all without costs.