OPINION OF THE COURT
Dominick J. Viscardi, J.
Plaintiffs herein, who are taxpayers of the City of Schenectady, move by way of order to show cause for a preliminary injunction enjoining defendants from conducting a special election scheduled to be held on June 5, 1979.
Pursuant to section 37 of the Municipal Home Rule Law, Local Laws, 1978, Local Law No. 4 of the City of Schenectady, which provided for a change in the City of Schenectady’s form of government from a limited council with an appointed City Manager (hereinafter referred to as "weak Mayor”) to a government by limited council with an elected Mayor with executive powers (hereinafter referred to as "strong Mayor”), was voted upon and passed during the general election on November 7, 1978. Following the approval of Local Law No. 4-1978 an informal petition of some 6,000 registered voters was presented to the city council requesting the repeal of the newly passed law. A law in the form of Local Law No. 2-1979, to repeal Local Law No. 4-1978, was drafted and on March 22, 1979 was adopted by the city council.[1] Pursuant to Local Law No. 2-1979 a special election was scheduled for June 5, 1979 wherein the voters of the City of Schenectady would be afforded an opportunity to reconsider the issue of the "strong Mayor” form of government presented during the general election. On April 19, 1979 the city council also adopted Local Law No. 3-1979 which implemented the procedures to be used in conducting special elections.
Plaintiffs contend that Local Law No. 2-1979 is fatally *74 defective in that it was not instituted pursuant to the same section of the Municipal Home Rule Law under which the law it seeks to repeal, Local Law No. 4-1978, was enacted. While Local Law No. 4-1978 was enacted pursuant to section 37, there does not appear to be any mandate in the Municipal Home Rule Law for following the same route for repeal of the prior law as was followed during enactment. Section 10 of the Municipal Home Rule Law clearly gives the city council the power to adopt, amend or repeal local laws. However, section 23 places a limit upon the city council’s power by requiring that a mandatory referendum be held when local laws fall within the catagories enumerated in subdivision 2 of section 23 of the Municipal Home Rule Law. The court is of the opinion that the repeal of the "strong Mayor” form of government falls within the meaning of subdivision 2 of section 23 and in particular paragraph f of subdivision 2, since the new law "[a]bolishes, transfers or curtails * * * [the] power of an elective officer.”[2] In any event, section 23 specifically permits a local law to provide that the mandatory referendum be held at a special election. Accordingly, plaintiffs’ argument that Local Law No. 4-1978 can only be submitted for repeal at a general election, as opposed to a special election, is without merit.[3] (See 1974 Atty Gen [Inf Opns] 260.) Further, since the Municipal Home Rule Law contains no restriction on the frequency of amendments to the city charter, there can be no objection to the instant special election as long as it comports with the procedures prescribed therein.
Plaintiffs also contend that Local Law No. 2-1979 is defective in that it does not provide for an alternate form of government. Their argument rests on section 5 of Local Law No. 4-1978 which states that it "shall become effective after it has been approved by the affirmative vote of the majority of the qualified voters of the city”. If the "strong Mayor” form of government is repealed, plaintiffs assert that the city will be *75 without a form of government. Plaintiffs’ position might have some merit absent the second sentence in section 5 of Local Law No. 4-1978 which states, "However, its [the new law’s] provisions shall not be effective until January 1, 1980, except that the mayor, with executive powers and additional councilman, shall be elected at the general election to be held in November, 1979 for four year terms each to take office on January 1, 1980.” There can be no doubt that the drafters of the "strong Mayor” law were free to provide for an effective date of January 1, 1980. (Municipal Home Rule Law, § 27, subd 4.) However, if none of the provisions of the "strong Mayor” law (with the exception of the provision for the general election in Nov. of 1979) is effective until January 1, 1980, there has been no effective repeal of the "weak Mayor” form of government until that date. Should the voters approve Local Law No. 2-1979, the city would simply continue under its present form of government. Should the voters reject the said law, then the "strong Mayor” form of government would become effective as scheduled on January 1, 1980.
Plaintiffs’ next argument is that Local Law No. 2-1979 is defective because it fails to set up in textual form the proposed changes to the prior law.
With respect to changes in prior law, subdivision 1 of section 22 of the Municipal Home Rule Law provides: "In adopting a local law changing or superseding any provision of a state statute or of a prior local law or ordinance, the legislative body shall specify the chapter or local law or ordinance, number and year of enactment, section, subsection or subdivision, which it is intended to change or supersede, but the failure so to specify shall not affect the validity of such local law. Such a superseding local law may contain the text of such statute, local law or ordinance, section, subsection or subdivision and may indicate the changes to be effected in its text or application to such local government by enclosing in brackets, or running a line through, the matter to be eliminated therefrom and italicizing or underscoring new matter to be included therein.” Proposed Local Law No. 2-1979 complies with this section in that it sets forth the full title, number and year of enactment. Even if the required specificity were not present, subdivision 1 of section 22 specifically provides that the validity of the local law shall not be affected.
The city, in enacting Local Law No. 3-1979, has elected to *76 have the special election conducted as if it were governed by the applicable provisions of the Election Law. Plaintiffs contend that in enacting Local Law No. 3-1979 the city is bound by section 4-108 (subd 1, pars b, c) of the Election Law to set forth the full text of the repeal of the "strong Mayor” law. Section 4-108 (subd 1, pars b, c) is not applicable to the special election, however, at least in terms of what must apear when a law is changed. Section 1-102 of the Election law provides in pertinent part: "Where a specific provision of law exists in any other law which is inconsistent with the provisions of the chapter, such provision shall apply unless a provision of this chapter specifies that such provision of this chapter shall apply notwithstanding any other provision of law.” There being no provisions in section 4-108 of the Election Law that it applies notwithstanding any other law, section 22 of the Municipal Home Rule Law would control to the extent that any of its provisions are inconsistent with section 4-108 of the Election Law.
Matter of Grenfell (185 Misc 558, affd 269 App Div 600, affd 294 NY 610), which is cited by plaintiffs in support of its argument that the full text must be set forth, is readily distinguishable from the facts in the instant case. In Grenfell the proposed repeal of a local law simply provided for a return to a form of government which had been abandoned some 10 years previously. Further, if the voters in Grenfell wished to ascertain what they were passing on, they would have been required to examine the provisions of a statute. In the instant case the "weak Mayor” form of government is still in existence and will continue as such pursuant to section 5 of Local Law No. 4-1978 until January 1, 1980. Further, the issue of the strong Mayor verses weak Mayor form of government was presented to the voters as recently as November 7, 1978. The new law seeking to repeal the old will be presented to the voters less than seven months later on June 5, 1979. Moreover, the new law clearly states its intent to repeal the "strong Mayor” form of government: "a local law repealing LOCAL LAW NO. 4-1978, WHICH WOULD have abolished the COUNCIL-MANAGER FORM OF GOVERNMENT BY GIVING TO THE MAYOR THE POWERS OF THE APPOINTED CITY MANAGER; AND PROVIDING FOR A SPECIAL ELECTION TO BE HELD ON JUNE 5, 1979.” As the court noted in Matter of Grenfell (185 Misc 558, 561, supra), "The spirit of the statute is clear; the voters must know what they are voting for.” The court cannot say that *77 Local Law No. 2-1979 is so ambiguous and so lacking in information that the voters of the City of Schenectady will not know what they are voting for.
Plaintiffs’ final contention is that the City of Schenectady has no authority to conduct a special election and that the county board of elections may not assist it to that end. Clearly, section 23 of the Municipal Home Rule Law contemplates that a city can hold a special election provided that the election is held not less than 60 days after the adoption of the local law by the legislative body and provided further that the law will become operative only if approved by the affirmative vote of a majority of the qualified electors of such local government. Without doubt the special election has been scheduled more than 60 days from its adoption. The issue of "qualified voters” must abide the outcome of the event. Most certainly the broad powers enumerated in section 10 of the Municipal Home Rule Law provide the city with the authority for conducting a special election. Since there is no contrary or inconsistent provision in the Constitution or in any general law, the court cannot say that the city was without power to draft Local Law No. 3-1979, nor is it without power to conduct a special election.[4]
With respect to the participation or assistance of the county board of elections in the special election, the court is unaware of any provision in the Election Law which would prohibit same. Moreover, section 3-224 of the Election Law expressly contemplates co-operation in matters of this kind. While section 5-612 of the Election Law specifically provides for the delivery of voting registration records to village clerks and officials of school districts, there is no mandate that the board of elections would be precluded from doing the same with the clerk for the City of Schenectady. The Court of Appeals has stated, "The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them.” (People ex rel. Hirsh v Wood, 148 NY 142, 147.)
For all of the reasons hereinabove set forth plaintiffs’ mo *78 tion for injunctive relief is denied and their complaint dismissed.

. The parties have consistently used the term "Local Law No. 2-1979” to describe the local law that repeals Local Law No. 4-1978. This is not correct, for the proposed local law can have no official number until and unless the voters vote favorably at the special election on June 5, 1979. In the meantime "Local Law No. 3-1979” concerning holding special elections has gone into effect and is officially known as Local Law No. 2-1979. For convenience the numbers herein are those used by the parties and not the official numbers.

. Irrespective of the arguments as to when the "strong Mayor” form of government becomes effective, the people of the City of Schenectady believed they had approved the "strong Mayor” form of government on November 7,1978. As a policy matter it is certainly appropriate that they have an opportunity to speak on the repeal of that form of government. (Morin v Foster, 45 NY2d 287, 294.)

. The court is aware that oftentimes fewer voters participate in a special election than in one that is general. There has been no showing in the instant case that this occurrence will favor one side over another. Nevertheless, assuming that some disparity exists, the remedy lies with the State Legislature which does not prohibit the procedure used in the instant case.

. Plaintiffs rely on subdivision 1 of section 8-400 of the Election Law for the proposition that special elections have been abolished in the State except for those called by the Governor. This provision of the Election Law clearly applies to Statewide special elections and in no way does it restrict local governments from conducting same pursuant to the Municipal Home Rule Law or other local law. (See Election Law, § 1-102.)