(35 Misc. Rep. 532.)

### In re GRIFFIN.

(Supreme Court, Special Term, Broome County.  July, 1901.)

INTOXICATING LIQUORS—LOCAL OPTION ELECTION.

Where the evidence shows that from failure of the officers of the town to properly redistrict it, so that at a statutory local option election the polls were so crowded that it was impossible for the officers of a certain district to receive all the votes, and that 250 voters were standing in a line formed when the polls were closed, the statutory local option questions must be resubmitted.

In the matter of the application of Frank E. Griffin for an order setting aside an annual town election, and application for a special election for the resubmission of the four questions under section 16 of the liquor tax law. Application granted.

Mangan & Mangan, for petitioner.
Radcliffe Park, for town of Union.

FORBES, J. This is a motion or proceeding to set aside an annual town election, and an application for a special election, asking for the resubmission to the people of the town of Union, Broome county, N. Y., of four questions under section 16 of the liquor tax law. The difficulty in this contest arises principally from one cause. The town of Union, prior to March, 1901, was composed of three election districts. The principal question arises out of the election in the First district, in that portion of said town known as the "Village of Lestershire." It is apparent from the moving papers and all the affidavits submitted that the proper election officers of the town of Union had neglected to redistrict said town prior to the submission of the question of local option under the four propositions referred to; also that the village of Lestershire was composed of but one election district, known as the "First Election District of the Town of Union." The number of legal voters in said district was something more than 1,300. At the time of the submission of the question of local option on the 6th day of November, 1900, it is asserted that more than 200 legal voters, wishing to exercise the elective franchise, were deprived of their votes, and were actually disfranchised, through the inadequacy of proper polling places and voting opportunities in said district; and that, while the election officers performed all of their duties at said election in receiving votes, still the number of legal voters was so great that it was absolutely impossible for said officers to receive and record their votes, and that about 250 legal voters were standing in a line formed, and ready to vote, when the polls closed. The policy of the law is that no legal voter shall be improperly and unnecessarily disfranchised; that all such voters shall have a fair opportunity to vote once, and to have that vote counted; and when that vote is so given and counted it must fairly record the will of the voter, and therefore of the people of the town, on the question of local option, to the end that the law in that respect may be impartially and rigidly enforced. It was the duty of the proper town officials to so redistrict the town as that all electors wishing to vote may have a fair opportunity to do so, and the expression of an opinion so made must be regarded on that subject as the highest law of the land. There should be no other sentiment about this proposition. The law should be enforced with a firm desire to do justice by all persons who are legal voters who desire to vote. There is but little doubt, or even dispute, in this case, that the electors of the village of Lestershire had no such opportunity, and that, as a matter of right, they must be permitted to use the elective franchise in a legal and proper manner. "The very object of an election is to ascertain the popular will, not to thwart it. The object of

the election law is to secure and preserve the rights of duly-qualified electors, and not to defeat them. Statutory regulations are enacted to promote justice and secure freedom of choice, not by technical obstructions to make the right of voting insecure and difficult. The votes of innocent electors should not be invalidated by irregularities or unauthorized acts or omissions on the part of public officers charged with the duty of preparing and printing official ballots, or furnishing proper and suitable polling places for the safe deposit and canvass of the votes of electors of the district." When the expression of the will of the people has been once fairly made, the courts and juries will never hesitate to enforce the law as it stands upon the statute. People v. Wood, 148 N. Y. 142, 42 N. E. 536; In re Stewart, 155 N. Y. 545, 50 N. E. 51. The last annual election in the town of Union, when the four questions under the liquor tax law were submitted to the people, must be set aside, and said election so far vacated that a resubmission to the legal voters of those four questions may be made under the law. The prayer of the petitioner must therefore be granted, and a special election is hereby ordered to be held in said town under and in pursuance of the statute in such case made and provided, to the end that the will of the people may be properly and legally expressed on the question of local option. The motion is granted, with costs, and a proper order may be prepared accordingly.

Motion granted, with costs.