(77 Misc. Rep. 634.)

## In re PENNER.

(Supreme Court, Special Term, Monroe County.　September, 1912.)

1. INTOXICATING LIQUORS (§ 38*)—CONDUCT—VOTING MACHINES.

　　Where the space on a voting machine for voting on propositions at a general election consisted of sixteen voting compartments, compartments 9 to 12 of which were used for local option questions in their statutory order, and the last four were vacant and not intended for use, but were left unlocked during the election, and the cards containing the designation of the propositions were more or less out of position, by reason of which two electors used one of the open spaces, thereby losing their

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

votes on the last proposition, and another voter moved the levers in the wrong direction, thus indicating the negative instead of the affirmative he intended, an application under Liquor Tax Law (Consol. Laws 1909, c. 34) § 13, for a resubmission of the four local option questions at a special town meeting will be granted.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 38.*]

2. ELECTIONS (§ 222*)—CONDUCT—VOTING MACHINES. '
    Where a voting machine is used, it must be so constructed and operated as to accurately take and register the will of the voter; and the fact that it has no separate locking device does not obviate the result of the omission to render it impossible to use the vacant spaces.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 222.*]

Application by Frank E. Penner for a special town meeting of the Town of Hamlin, Monroe County, for the submission of the local option questions under Liquor Tax Law, § 13. Granted.

Werner & Harris, of Rochester, for petitioner.
Arthur Warren, of Rochester, for Millard F. Hincher, intervening.

SAWYER, J. [1] This is an application under section 13 of the Liquor Tax Law (Consol. Laws 1909, c. 34) for a special town meeting in the town of Hamlin, Monroe county, N. Y., at which the four local option questions under said law shall be resubmitted to the electors of said town.

It appears that the election of November 7, 1911, was had by use of a voting machine, and that the space used for the purpose of voting upon propositions was at the right of the machine, and consisted of sixteen voting compartments. The first eight of these compartments were designated for the amendments to the state Constitution and other similar propositions. The next four, namely, Nos. 9, 10, 11, and 12, were used for the excise propositions in their statutory order; while the last four were vacant, and not intended to be used.

The proceeding is based upon the allegation that these last four spaces were, during the election, left unlocked; and that some of the electors who intended voting upon the local option questions used these vacant spaces, mistakenly supposing that they were thereby registering their votes as intended.

It is alleged, further, that at or about the beginning of the election, and for approximately two hours thereafter, the cards which were inserted in the machine to designate the levers which must be used to vote upon these questions had slipped out of place, so that same did not truly indicate the direction in which the lever must be moved to register an affirmative vote; and that during some of the time the designation of question No. 4 was actually at the lever of the thirteenth space in the column, which was, as has been seen, a vacant space, and no vote under which was registered.

It is undisputed that spaces 13, 14, 15, and 16 were not intended to be voted upon, and were left unlocked during the entire election—an act which is sought to be excused and its possible consequences overlooked by the statement that the machine contained no device for their fastening. As to when or to what extent the cards containing the des-

ignation of the excise proposition became misplaced, there is, on the contrary, a sharp conflict of fact. It is conceded that the elector who voted No. 129 or 130, when he left the booth, called the attention of the chairman of the board to the fact that they were out of place; and that he, before permitting further voting, went into the booth, restored them to their proper position, and so fastened them with a toothpick or a match that they thereafter there remained.

The petitioner presents the affidavits of 9 electors of the town, who voted prior to the reporting of the situation to the board, the first one being Mr. Douglass, who cast the third ballot at the election, and the others interspersed thereafter down to Mr. Nesbit, who voted ballot No. 91. All these affidavits declare positively that at the time their ballots were cast the excise cards were more or less disarranged, rendering most of them uncertain as to whether they voted according to their intention or not, and in some instances caused the witnesses, in their attempt to vote upon proposition No. 4, to actually lose their votes by leading them to use one of the vacant unlocked spaces below for that purpose. As against this, there are presented in behalf of the intervener a large number of affidavits of persons who voted at about the same time and prior to the correction of the error in the location of the cards; many of these swearing positively and unequivocally that when their votes were cast the cards were in place and truly designated the levers to be used for voting upon excise propositions. Some 10 or 12, however, refrain from making any assertion as to this; while others content themselves with the statement that they noticed nothing wrong with the machine. It is interesting to observe, in this connection, that many of them also state that they voted not only the spaces intended for excise propositions, but the four vacant spaces below as well, which might reasonably suggest the thought as to why they should have taken that needless trouble if the machine appeared regular upon its face. It is, however, not necessary to decide when the cards were moved, or how long they had remained out of place prior to the fact being discovered by Mr. Osborn. It is uncontradicted that the four places below were left entirely unfastened, and that during some portion of the time the cards were more or less out of position; that by reason of these facts, either alone or in combination, two, at least, of the electors were led into using one of these open spaces, and thereby lost their votes upon the fourth proposition; that at least one other, deceived by the same misplacement, moved the levers down, and thus voted in the negative instead of the affirmative, as he had intended.

It is not stated, and there is no way of knowing, how many more electors are similarly situated, for it is conceded that there was no registry of the number of times the blank spaces were used; but it is reasonable to believe that there were a number of such.

[2] That the machine had no separate locking device does not obviate the result of the omission to render it impossible to use these vacant spaces. Where a machine is used, it must be so constructed and operated as to accurately take and register the will of the voter; and

the duty of the election officers to see that it is competent for the purpose is fundamental.

The policy of the law is that no legal voter should be improperly disfranchised; that all such voters should have a fair opportunity to vote once, and have that vote counted; and that, when that vote is so given and counted, it must fairly record the will of the voter, and therefore the people of the town, on the question of local option, to the end that the law in that respect may be impartially and rigidly enforced. Matter of Griffin, 35 Misc. Rep. 532, 71 N. Y. Supp. 1127.

The case falls squarely within the principles of the Keady Case (In the Matter of the Application of Keady, 3 Liquor Tax Reports, 532), and because of the irregularities complained of the questions must be resubmitted at a special town meeting.

Ordered accordingly.