## CAUTIÑO ET AL. *v.* MUÑOZ ET AL.

### APPEAL from the District Court of Guayama.

No. 811.—Decided November 11, 1912.

APPEAL—MOTION TO DISMISS APPEAL.—Every motion to dismiss an appeal should be filed prior to the date set for the hearing of the appeal, entered on the motion docket, argued by counsel and disposed of by the court prior to the hearing of the appeal.

ID.—TRANSCRIPT OF RECORD ON APPEAL—STIPULATION.—When, as in the case at bar, the parties stipulate as to the questions which shall be included in the transcript on appeal, the appeal will not be dismissed on the ground that "a transcript of all the proceedings had in the contest" had not been filed in the appellate court in accordance with the provisions of section 11 of an Act to provide a manner for contesting elections, approved March 7, 1906.

ELECTIONS—SECRET BALLOT—AUSTRALIAN SYSTEM.—No provision exists in our Election Law of 1906 requiring a secret ballot. It is only required that elections shall be conducted by means of ballots in accordance with the Australian system.

ID.—ELECTORS PHYSICALLY UNABLE TO MARK BALLOT—NULLITY OF ELECTION—REJECTION OF VOTES.—Under our Election Law of 1906 electors who by reason of physical disability or inability to read or write are unable to mark their ballots, may request one of the inspectors to mark their ballots for them. Even supposing that in the case at bar it had been proven that more than one hundred electors had voted with the assistance of the inspectors in the manner above mentioned, said electors being capable of preparing their own ballots, this would not be sufficient grounds upon which to annul the entire election, but could only serve as grounds to reject the votes thus illegally cast, and supposing that by rejecting the said one hundred votes the result of the election would be changed, it would require other additional evidence in order to annul the election entirely.

ID.—VALIDITY OF ELECTION—VARIATIONS FROM STRICT OBSERVANCE OF ELECTION LAW.—In the case at bar it was held that the election contested in this action was conducted in accordance with the Election Law in force in Porto Rico and if said law was not observed strictly on some points such variations are not sufficient to invalidate the entire election.

PLEADINGS—ANSWER TO COMPLAINT—NEW MATTER OF DEFENSE—PRESUMPTION OF DENIAL.—Our Code of Civil Procedure does not require the plaintiff to reply to an answer to the complaint which alleges new matter of defense. By operation of law all new matter alleged in the answer to the complaint is deemed to be denied without the necessity of filing a written denial.

ID.—CONDITIONAL ADMISSION OF FACTS—ORAL PLEADINGS—REPLICATION.—In the case at bar the trial court refused to allow the introduction of the admission of the plaintiffs to the effect that certain electors voted illegally because

the admission was made on the condition that the plaintiffs were to be allowed to prove that said electors voted for the defendants. *Held:* That the trial court committed no error in refusing said conditional admission because to allow the same would be equivalent to allowing the introduction of oral pleadings in a district court which is not allowed by our Code of Civil Procedure. The issue raised in said conditional admission of the plaintiffs should have been set up by means of a written replication alleging the facts stated in said conditional admission.

COSTS—COSTS IN CONTESTED ELECTION CASES.—Both parties to an action contesting the election have the same rights in regard to costs and the taxation of costs is governed by section 12 of the Act relative to the contesting of elections, approved March 7, 1906, according to which section the allowance of costs shall be governed by the provisions of the Code of Civil Procedure applicable thereto.

ID.—ATTORNEY'S FEES.—In accordance with the settled jurisprudence of this court, in order that the defeated party may be sentenced to pay attorney's fees as a part of the costs it is necessary that the value of the subject matter exceed $500.

ID.—CONTESTED ELECTION—AMOUNT IN LIQUIDATION—SALARIES OF DEFENDANT OFFICERS—ATTORNEY'S FEES.—In an action contesting an election the amount in litigation may be determined on the basis of the salary of the officers whose elections are contested for the term for which they were elected. On this basis, as in the case at bar, the only office carrying a salary of more than $500, which is the necessary amount to be in litigation in order that one party may be adjudged to pay attorney's fees as a part of the costs, is the office of mayor, it is necessary to conclude that only the defendant mayor is entitled to recover from the plaintiff. mayor his attorney's fees and the costs and disbursements incurred in the suit. The other defendant officers are entitled to recover only their costs and disbursements.

ID.—DISCRETION OF COURT—GUILT OR TEMERITY.—Under the Costs Act of March 12, 1910, the trial court has the discretional power of allowing costs, bearing in mind the degree of guilt or temerity of the party against whom judgment is rendered, and the plea that the complaint raises new. questions of great importance from the standpoint of public morality may be considered in establishing the degree of guilt or temerity; but this court will not interfere with the exercise of said discretional power of the court below unless it is shown that a great abuse of discretion has been committed.

The facts are stated in the opinion.

*Messrs. Cayetano Coll y Cuchí, Herminio Díaz Navarro* and *Eduardo Cautiño* for appellants.

*Messrs. Willis Sweet, José Tous Soto, Luis Abella Blanco, José C. Ramos, Pedro Gómez Lasserre* and *Eduardo Capo* for respondents.

MR. JUSTICE MACLEARY delivered the opinion of the court. This is a case involving a contested election. The plain-

tiffs were the candidates of the Unionist Party for mayor and alderman and school trustees of the town of Guayama, in November, 1910, and the defendants were the candidates of the Republican Party for the same offices at the same election. On a canvass of the votes by the Executive Council, the defendants were declared elected by majorities, severally ranging from fifteen to twenty-one votes. This contest was instituted under the law providing for the trial of such cases. (Act approved March 7, 1906; Sess. Acts 1906, pp. 78-82.) The complaint, after setting out the alleged facts at great length, concluded with the following prayer, to wit:

"And we pray the court, in view of the evidence presented in support of the complaint, to render a judgment declaring null and void the decisions made by the Executive Council in favor of all and each one of the defendants; and declaring that the plaintiffs herein are the candidates who obtained the greatest number of legal votes in the election held on November 8, 1910, for the offices of mayor, members of the municipal council and of the school board of the city of Guayama, and therefore are entitled to fill said offices for which they were elected. That a certificate of election signed by your honor be issued to them in order that they may enter into the discharge of their duties in said public offices for which they received the greatest number of legal votes. That they be given possession of their respective offices, for which they obtained the greatest number of legal votes in said election, and therefore that the defendants be removed therefrom. That any other remedy may be granted to them under the law to which they may be entitled, to the effect that said elections be declared null on account of the illegalities committed therein; and, if it is deemed convenient by your honor, to order the holding of a new election in the manner and form prescribed by the election law as to this matter. That the defendants be condemned to the payment of all the costs of this litigation, including attorney's fees."

After answer duly made, a trial was had in the District Court of Guayama before Hon. Harry P. Leake, special judge, and a judgment was rendered in favor of the defendants declaring them duly elected to the several offices which

they were holding and that they should recover costs, disbursements and attorney's fees. From this judgment, rendered on August 30, 1911, the plaintiffs appealed in due time and presented here the record which is now before us.

A preliminary question arises on a motion made at the hearing by the respondents to dismiss the appeal on the ground that there is no certificate either of the clerk or of the attorneys that the transcript contains all the proceedings taken in the cause. Section 11 of the Act of March 7, 1906, (the law of contested elections), is relied on as requiring this on appeals in such cases. Motions to dismiss an appeal should be and are usually made some days before the day set for the hearing and are placed on the motion docket and separately argued and considered by the court prior to the trial of the case itself. It might well be maintained that this motion comes too late; the transcript having been filed on May 13 and the hearing not occurring until nearly a month thereafter. But the respondents were permitted without objection to file their motion and it was taken by the court to be considered in connection with the case itself. Without regard to other objections to this motion, it is a sufficient answer thereto to advert to the fact that this case is brought here on a stipulation confining the court and counsel to three questions only arising during the trial and specifying them. This being the case there was no necessity to file "a transcript of *all* the proceedings had in the contest" as specified in section 11 of the said act. The motion could not be granted without disregarding the stipulation and must accordingly be overruled.

By a stipulation duly filed and appearing in the transcript, the parties limited the matters to be considered by this court to three questions, to wit:

"A. Nullity of the election, inasmuch as the voting was conducted *viva voce* (by open vote).

"B. Error committed in the judgment in regard to the taxation of costs.

"C. Error committed . during the trial by reason of the court's refusal to accept the admissions made by the plaintiffs in regard to the illegality of several voters, as it was alleged in the answer that they were illegal voters."

We will change the order of these questions, arranging them as it seems to us more logically, A, C, B.

First. In regard to the nullity of the election on account of the voting being conducted *viva voce* instead of by ballot, it may be well to refer to the election law. (See Sess. Acts 1906, pp. 53-77.) There is nothing in our statutes expressly requiring a secret ballot, but it is provided that the election shall be conducted by ballot along the lines of the Australian ballot system. It is also provided that the electors shall come into the polling room not more than three at a time, and each shall receive the official ballot from one of the officers of the election and retire to a booth and there prepare his ballot and fold it properly and deliver it to the officer, who shall place it in the box. It is also provided that no elector shall mark his ballot in any way so that it can be ascertained for whom he voted.

But provision is made for illiterate or physically incapacitated voters having the aid of one of the inspectors in the preparation of his ballot. It appears that in this election at Guayama a great many, even a majority of all the voters, solicited such assistance. To such an extent was this practiced that the plaintiffs claim that the election was virtually by an open vote; that is to say, made by word of mouth instead of by ballot as required by law. However, the proof, as far as the same appears in the record, shows only one vote to have been cast in this manner by any person who could properly prepare his own ballot and who did not need to solicit the assistance of one of the inspectors. This vote was cast by José Muñoz Vásquez, the principal defendant, and the one at present holding the office of mayor

of the city. It seems that he declared, when casting his ballot, that he voted for the entire list of republican candidates, thereby possibly intending to set an example to his partisans and to create a sentiment in favor of his ticket. Even though it had been proven that many votes, say over one hundred, had been cast openly in this manner, by persons who were able to prepare their own ballots and who were not under the necessity of soliciting aid in the preparation of the same, still this would not, in our opinion, nullify the whole election but would only furnish grounds for the rejection of such votes as were thus illegally cast. It is true that on proper evidence the result of the election might be thus changed and the contesting candidates shown to be elected instead of those holding the offices; but it would require evidence of other additional facts to entirely nullify the election. If it had been proven that ballots were altogether rejected and that persons offering to vote were merely called upon to state orally for which party or for what persons they chose to vote at the election, then there would be some reason, and a very good one, for declaring the entire election void; but such is not the case presented in the record. This election was conducted, as is shown by the evidence contained in the record, in general accordance with the election law of Porto Rico, and if some variations were made from the said law they were not sufficient to invalidate the election, and we must hold that the election held for the municipal offices of Guayama in November, 1910, cannot be nullified on this ground. (McCrary on Elections, Chapter XIII; *McCrane* v. *Nez Perce Co.*, Am. Cas. 1912 A, p. 170; 18 Idaho, 714; 112 Pac. Rep., 312.)

The next question which we shall consider is the refusal of the trial court to accept the admissions made by the plaintiffs in regard to the legality of several votes alleged by the defendants to be illegal. This admission was coupled with a proposal to prove that these votes were cast in favor of

the defendants. We must consider admissions made or proposed to be made by either party in connection with the pleadings filed in the case and the issues thereby made up on which the case was tried. In this case the plaintiffs, in their complaint, set up that at least sixty of the voters casting ballots at the municipal elections were persons not qualified legally to vote and that their votes were consequently void and should not be counted for the defendants, as they had been in the election returns. The defendants, on the other hand, in their answer, denied these allegations, and as new matter set up that over two hundred illegal votes were cast in favor of the plaintiffs, naming the voters who were alleged to be disqualified. The Code of Civil Procedure does not require the plaintiff to file a written replication to the answer of the defendant setting up new matter, but provides that the same shall be taken as denied, without the necessity of a written pleading. Of course, admissions may be made by either party during the progress of the trial in regard to proof offered by his antagonist, but such admissions must be made in terms sufficient to cover the allegations in the pleading. As in this case the plaintiffs had a right to admit that these votes mentioned were illegal, but they should have made the admission broad enough to cover the allegation in defendant's answer that these illegal votes were cast in favor of the plaintiffs. They had no right, and by mere verbal admission, to state as admitted the illegality of the votes and at the same time offer proof that they were cast in favor of the defendants. To raise such an issue, a written replication should have been filed before the trial began, or, with the permission of the court, after the beginning thereof. To permit a qualified admission such as that proposed by the plaintiffs would be to allow verbal pleadings in the district court, which is not tolerated under our Code of Civil Procedure. Then the court did not err in refusing the plaintiffs the right to make the qualified admission in regard to the illegality of the votes mentioned in defendant's

answer. (See Code of Civil Procedure, Title VII; Sess. Acts 1904, p. 213 *et seq.*)

The third question has been reserved to the last, not only because of its importance but because the taxation of costs comes naturally after the decision of the case. It seems that the costs in this case are unusually large and the attorney's fees amount to twelve or fifteen thousand dollars. In fact, it is stated in one of the briefs that the bill of costs exceeded $30,000 as originally presented to the district court, and was finally reduced by the court, in exercising its discretion, to $18,774.37. But we have nothing to do with the amount of the costs, as that question is not before us. No attack was made upon the estimate fixed by the court, except that it was illegal to allow attorney's fees to the defendants in this case. The appellants contend that the contested election law, in section 13, gives the plaintiff the right to recover, as a part of his damages, his attorney's fees expended in the cause. They also contend that this right is not extended to the defendants, but that they must litigate at their own expense at least as far as remuneration to their lawyers is concerned. Section 12 of the law governing contested elections provides that the costs in such cases shall be taxed according to the laws governing contests in civil cases, except when otherwise specially provided. (See Sess. Acts 1906, p. 81.) The respondents maintain that this is the section which governs in this case, taken in connection with sections 327 and 329 of the Code of Civil Procedure as amended by the last statute on that subject. (See Chapter VI of Code of Civil Procedure, Sess. Acts 1904, p. 282 *et seq.*)

It would seem strange that the legislature should provide that one party to a suit—even though it be a contested election case—should have the right to recover attorney's fees, as a part of the costs, and deny the same right to the other party. It would be doubly strange that this concession should be made to the plaintiffs, who initiated the contest, and denied to the defendants, who had won the election and

been declared entitled to the offices by the Executive Council, and received the certificates and were in possession under at least what appears to be a *prima facie* title. We cannot concur in the view that it was the legislative intention to award attorney's fees to one of the parties and deny them to the other. They are both on an equal footing in that respect. According to our view, the costs in this case, including the attorney's fees, are governed by section 12 heretofore cited and must be awarded as in other civil cases.

The question then arises whether or not this case is one in which attorney's fees can be adjudged, as was done by the District Court of Guayama in the judgment rendered at the termination of this election contest.

But we cannot agree with the judgment from which this appeal is taken, in so far as it is therein ordered that the defendants are entitled to recover from the plaintiffs the costs and disbursements of the trial, together with their reasonable attorney's fees. Such an order, as made by the court below, is in violation of section 327 of the Code of Civil Procedure, as amended by the law of March 12, 1908, and as construed by this court in rendering its decisions in the cases of *González* v. *Gromer,* 16 P. R. R., 1; *Modesto* v. *Dubois,* 16 P. R. R., 709; *Veve* v. *Fajardo,* decided on June 29, 1912, and *Torres* v. *Pérez,* decided June 29, 1912.

It may be admitted that the costs and disbursements of a suit may be awarded to the successful party, but it is an indispensable requirement established by law, as we have heretofore decided, that, in order to award attorney's fees, the amount in controversy in the case or proceedings must exceed $500. In this case, the amount involved may be measured by the salary of the offices for which the contest was made. The office of mayor of Guayama carries a salary of $1,200 a year, and he is elected for four years, making an aggregate of $4,800 as the value of his office; and under the Contested Election Law (section 5) the contestee is required

to give a bond in an amount not less than double the amount of the salary for the full term prescribed by law. In this case a bond was demanded of the present incumbent of the mayor's office in the sum of $11,000, and accordingly filed. From these facts, and regarding the salary of the several officers as the pecuniary standard to be used in the controversy, we think there can be no doubt that such an amount exceeds $500, and accordingly that attorney's fees can be taxed as a part of the costs, in accordance with section 12 of the law governing contested elections. But this amount reaches $500 in the present case only in regard to the plaintiff who brings an action against one of the defendants in connection with the office of mayor, which is the only office that carries with it a salary in excess of that amount. This is not so with respect to the other plaintiffs, who joined in the action with the candidate for the aforesaid post, inasmuch as the offices they sought had no salary attached thereto, and therefore no money consideration was involved. Hence, it is clear to our minds that the plaintiffs in this case may be ordered to pay to the defendants the costs and disbursements in the present suit, and the plaintiff who is the candidate for the office of mayor can alone be compelled to make payment to the defendant occupying the said office of a reasonable amount for his defense.

We have not lost sight of the fact that the appellants herein maintain that this suit should have been decided without any special condemnation in regard to the costs, for the following reasons:

(1) Because it appears from the findings in the judgment below that the plaintiffs had a reasonable cause of action, and proved nearly all the allegations set forth in the complaint;

(2) Because new questions were raised in the complaint, which were of the greatest importance from the standpoint of public morality.

We must, however, bear in mind that the matter in connection with costs is governed by our local statutes, and that thereby the judge trying this case has the discretional power to grant the same in view of the degree of guilt, if any there were, of the party against whom the judgment was rendered. (See Law of March 12, 1910, heretofore referred to.) Therefore, what must be considered in order to award the costs is the guilt or temerity of the party against whom the decision is given, although the new matter presented may be taken into account in considering such guilt or temerity.

We have heretofore frequently decided that this court would not interfere with the exercise by the inferior courts of their discretional powers, unless it is shown that a serious abuse of discretion has been committed, which has not occurred in this case, so far as the costs and disbursements, to the payment of which all the plaintiffs have been sentenced, is concerned; but with regard to the matter of the payment of attorney's fees, to which all the plaintiffs have been condemned, such judgment can be upheld only with respect to the plaintiff seeking the position of mayor against the party defendant who was elected to that office, without applying the said judgment to the other plaintiffs herein, for the reasons aforesaid.

In view of the foregoing, the judgment rendered in this case should be affirmed, except in the matter of costs, disbursements, and attorney's fees, and in regard thereto should be modified as herein indicated; and, in accordance with the said modification, an opportunity should be given to the defendants to present new memoranda within the term of ten days from the date on which the judgment of this Supreme Court is registered in the court below, as is provided by law. Judgment should be rendered in accordance with this opinion.

*Decided accordingly.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.

Motion of defendant, Genaro Cautiño, by his attorney, Eugenio Benítez Castaño, for a rehearing of this case was overruled on December 23, 1912.